OPINION OF THE COURT
Jasen, J.
The narrow issue presented on this appeal is whether the trial court abused its discretion in declaring a mistrial by reason of the jury’s apparent inability to reach a verdict. If there was such an abuse, a retrial would be barred violative of the defendant’s right against double jeopardy.
Defendant was brought to trial on charges of sodomy in the first degree and assault in the second degree. The People’s case consisted solely of the testimony of the complainant and the arresting officer; the defense presented only a detective from the police crime laboratory.
The complainant testified that defendant had let himself into her apartment while she was alone under the guise that he needed to do some handiwork for the building superintendent, and that, shortly thereafter, he emerged from the bathroom naked and forced her to perform oral sex. She further testified that she ran away immediately thereafter and called the police.
On cross-examination, defense counsel questioned the complainant about the discrepancies between her testimony on direct and that given at the preliminary hearing *246 and the Grand Jury. At the preliminary hearing, for example, the complainant had testified that the defendant entered her apartment together with the landlord, that he remained for several hours, and that she permitted him to use her shower prior to the alleged sexual assault. Additionally, the complainant had stated at the Grand Jury that she unsuccessfully attempted to defend herself with a kitchen knife — a matter which she failed to mention at either the preliminary hearing or at trial. While there were these and other more superficial inconsistencies in complainant’s statements, nevertheless, she did not alter her testimony as to the forceful nature of the sexual act.
The arresting officer testified briefly that he received a radio transmission, met the complainant who explained the incident, found defendant in his own apartment and placed him under arrest, and took complainant to the hospital. The defendant’s only witness testified that the laboratory test failed to disclose any sperm, in complainant’s mouth. On cross-examination, he acknowledged that such tests very rarely do.
The trial had commenced in the afternoon of April 18, 1983. The following morning, the defense rested, the court charged the jury and deliberations began at 11:00 a.m. During the 6V2 hours that followed, the jury spent 1 hour and 15 minutes for lunch, requested further instructions and readings of the complete testimonies of both prosecution witnesses which cumulatively took 32 minutes, and completed their deliberations.
At 5:40 p.m., the jury sent a note to the Trial Judge stating, “Your Honor, we cannot come to a verdict.” The jurors were reassembled in the courtroom and the Judge read from CPL 310.60[1] and explained tha,t the statute applies where further deliberations would be “fruitless” — where “there would be no possibility of further deliberations altering the positions of the jury.”
*247 Addressing the foreperson in the presence of the other jurors, he then engaged in the following dialogue:
“the court:
Now, is that, Madame Foreperson, is that the position of the jury at this time? Do you think that if you were to discuss this case for any additional period of time the jury is likely to come to any changed position?
“the foreperson:
No, sir.
“the court:
You are suggesting to me that this jury is, what you might say hopelessly deadlocked, split down the middle and there is no chance of the jury changing their position? Essentially the problem is that this case was tried, it’s true in only a period of a day but the circumstances provide that when a jury is discharged, the defendant is to be re-tried on the indictment and so we will select another jury with no more care than we selected this one. They will hear the same witnesses and they will have to hear the same case. So if you think you would like to go to dinner and continue your deliberations then you think that will produce anything, we will do that. If you want to indicate that this jury is so deadlocked that it’s not going to help, you can tell me that now.
“the foreperson:
I believe that we are deadlocked.
“the court:
I am sorry, I can’t hear you.
“the foreperson:
I do believe that we are deadlocked.
*248 “the court:
And you are suggesting that the division of twelve jurors is so hopelessly deadlocked that no amount of further deliberations will be of any value and it will be a waste of your time and the court’s? Is that what you are suggesting?
“the foreperson:
Yes.”
ie court made a finding that a verdict was not likely to be reached within a reasonable time and discharged the jury. Defense counsel noted his objection on the ground that the jury had deliberated for only a short time. The court, however, responded that the time was reasonable in light of the brevity of the case and the nature of the complainant’s testimony, and that there was no dissent from any of the jurors that further deliberations would be of any value. The case was then reassigned for a new trial. At that point,
 On reassignment to trial before respondent Supreme Court Justice, defendant moved to dismiss the indictment on the grounds that a retrial was violative of the protections against double jeopardy under the Fifth Amendment of the United States Constitution[2] and CPL 210.20 (subd 1, par [e]).[3] The motion was denied and this article 78 proceeding was commenced in the Appellate Division. Defendant raised the same arguments in that *249 court seeking a writ of prohibition to bar retrial.[4] The Appellate Division unanimously denied the petition, without opinion. We now affirm for the following reasons.
The constitutional guarantee against double jeopardy safeguards the defendant’s “valued right to have his trial completed by a particular tribunal” (Wade v Hunter, 336 US 684, 689) which “he might believe to be favorably disposed to his fate” (United States v Jorn, 400 US 470, 486.) This “valued right” protects the defendant against the increased financial and emotional burden of a second prosecution, the prolongation of an unresolved stigma and the enhanced risk of an unjustified conviction. (Arizona v Washington, 434 US 497, 503-504.) In the oft repeated words of Justice Black, “[t]he underlying idea * * * is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.” (Green v United States, 355 US 184, 187-188.)
But the proscription against twice putting a defendant in jeopardy “does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in final judgment.” (Wade v Hunter, supra, at p 688.) Rather, unlike the situation in which the trial has resulted in a judgment of acquittal, a retrial is not automatically barred where the merits of the charges against the defendant have not been resolved. Indeed, the valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest “in seeing that a criminal prosecution proceed to verdict”. (Illinois v Somerville, 410 US 458, 463; Arizona v Washington, supra, at p 505.) The “classic example” is a mistrial where the Trial Judge discharges a genuinely deadlocked jury. (Downum v United States, 372 US 734, 736; see, also, *250 United States v Perez, 9 Wheat [22 US] 579; Logan v United States, 144 US 263.) In such a case, there is no bar to a retrial.
The decision to declare a mistrial necessarily rests in the broad discretion of the Trial Judge (Hall v Potoker, 49 NY2d 501, 505; see, also, People v Ortiz, 54 NY2d 288, 292; Illinois v Somerville, supra, at p 462) who is best situated to take all the circumstances into account and determine whether a mistrial is in fact required in a particular case. (People v Michael, 48 NY2d 1, 9; Gori v United States, 367 US 364, 368.) Moreover, failure of reviewing courts to accord great deference to a Trial Judge’s decision — and, instead, to bar retrial whenever the facts are viewed somewhat differently on appeal — might well encourage a needless waste of judicial resources and time by requiring further deliberation of juries that are hopelessly deadlocked (see Arnold v McCarthy, 566 F2d 1377,1387; United States v Goldstein, 479 F2d 1061, 1068) and, more drastically, might similarly encourage the employment of “untoward pressure” upon juries or, simply, their eventual exhaustion to break deadlocks at the risk of unjust verdicts (see People v Pagan, 45 NY2d 725, 727; People v Carter, 40 NY2d 933, 934; People v Faber, 199 NY 256, 259; Arizona v Washington, supra, at p 510; United States v Horn, 583 F2d 1124, 1127; Arnold v McCarthy, supra, at p 1387).
Nevertheless, trial courts are not free to act without restraint. Rather, the “authority to discharge a jury from giving any verdict” is limited to those situations where “in [the trial court’s] opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.” (United States v Perez, supra, at p 580.) While it may be impossible to define with precision those circumstances justifying the declaration of a mistrial (id.; Illinois v Somerville, supra, at p 462) — and, indeed, the rigid application of any mechanical formula would be invalid (Arizona v Washington, supra, at p 506; Illinois v Somerville, supra, at p 462) — still, there are some identifiable factors which are helpful in determining the “necessity” of discharging an apparently deadlocked jury.
*251 Those factors, which should be considered by the trial court before exercising discretion, include the length and complexity of the trial, the length of the deliberations, the extent and nature of the communications between the court and the jury, and the potential effects of requiring further deliberation. (See United States v Horn, supra, at p 1127; Arnold v McCarthy, supra, at pp 1386-1387; United States v See, 505 F2d 845, 851-852; ABA Project on Minimum Standards for Criminal Justice, Trial by Jury [approved draft, 1968], § 5.4[c].)
Considering the circumstances of the present case in light of these factors, we believe that the Trial Judge did not abuse his discretion in deciding that the jury could not reach a verdict and declaring a mistrial. The trial was rather short and the issue to be resolved relatively simple. The People’s entire case took but one afternoon and the defense only several minutes the following morning. The evidence consisted of the testimony of only two government witnesses and one for defendant, and only that of the complainant was at all lengthy and detailed. Indeed, the case was a simple one involving only two straightforward counts of sodomy and assault predicated upon a single incident, and requiring the resolution of but one factual issue — i.e., the credibility of the complainant. Neither the law nor the facts were complicated or confusing, requiring any great length of time for the jury to analyze legal intricacies or sort out factual questions. Rather, there was involved but one potentially irresolvable factual issue — i.e., whether complainant’s trial testimony was believable in light of her earlier, somewhat disparate, testimony at the preliminary hearing and Grand Jury. It is not unlikely that a jury could shortly become deadlocked over a complainant’s testimony in a case such as this.
In light of the foregoing, it cannot be said that the jury’s deliberation, which lasted approximately 4xh hours excluding lunch, was per se insufficient as a matter of law. Indeed, jury deliberations lasting a similar period of time have repeatedly been held by Federal appellate courts throughout this country to be adequate under circumstances analogous to those here. (See, e.g., Nelson v District Ct., 543 F2d 631 [2½-day trial, 5½ hours deliberation]; *252 United States v Larry, 536 F2d 1149 [3-day trial; 3½ hours deliberation]; United States v Beckerman, 516 F2d 905 [2½-day trial, 6 hours deliberation]; United States v Brahm, 459 F2d 546, cert den sub nom. Medina v United States, 409 US 873 [2-day trial, 5 hours deliberation]; Grogan v United States, 394 F2d 287, cert den 393 US 830 [4-day trial, 5 hours deliberation]; United States v Cording, 290 F2d 392 [3-count trial, less than 4 hours deliberation].) While a very short period of deliberation in a lengthy and complicated case may be an inadequate predicate on which to find an irreconcilable disagreement among the jurors, where, as here, the length of the trial was short and the issue clear, the trial court may well be justified in accepting a deadlock after only a few hours of deliberation.
Additionally, the Trial Judge adequately explored the genuineness of the deadlock with the jury itself. It is significant that the jury on its own initiative declared that it was hopelessly deadlocked. Presumably the jury reached a consensus before reporting to the Judge through the note presented by the foreperson. (See Arnold v McCarthy, supra, at p 1387; United States ex rel. Webb v Court of Common Pleas, 516 F2d 1034, 1044, n 56; United States v See, supra, at p 851; United States v Lansdown, 460 F2d 164, 170; United States ex rel. Russo v Superior Ct., 483 F2d 7, 16, cert den 414 US 1023.) Thereafter, the Judge questioned the jury through its foreperson who insisted that further deliberations would be fruitless and that returning after dinner, as the court itself suggested, would not be helpful. There was no word or other indication of dissent from any of the jurors. (Cf. United States v Beckerman, supra, at p 910; see, also, Nelson v District Ct., supra, at p 632; United States v See, supra, at p 851.) Although the better practice would have been for the Judge to obtain the assent of the other jurors by questioning them as a whole, rather than by merely addressing the foreperson (cf. 1 NY CJI 42.60, p 1019), no prejudice resulted under the facts here. In light of the unequivocation of the foreperson’s responses and the absence of dissent from the other jurors, the court’s investigation of the jury’s inability to reach a verdict was adequately extensive.
Finally, inasmuch as the jury seemed genuinely to have reached a stalemate, it was reasonable for the trial court to *253 avoid any coaxing, inducing or pressuring the jury to return for further deliberations. Such action could have proven coercive and prejudicial and might have resulted in the denial of a fair verdict to the defendant or the People, a verdict which the jury might not otherwise support. (People v Carter, supra, at p 934; People v Faber, supra, at p 259; Arizona v Washington, supra, at p 510; Arnold v McCarthy, supra, at p 1387.) Likewise, under these circumstances, it was not error for the court to fail to give an Allen charge. (Allen v United States, 164 US 492.) Such a charge can sometimes be improperly coercive (see United States v Beckerman, supra, at p 909) and, in any event, it was not requested by defendant.
Accordingly, it cannot be said that the trial court abused its discretion in declaring a mistrial and discharging the jury, and a retrial is not barred by the constitutional or statutory guarantee against double jeopardy. The judgment of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jones, Wachtler, Meyer, Simons and Kaye concur.
Judgment affirmed, without costs.

. CPL 310.60 provides in pertinent part:
“1. A deliberating jury may be discharged by the court withou t having rendered a verdict only when:
“(a) The jury has deliberated for an extensive period of time without agreeing upon a verdict with respect to any of the charges submitted and the court is satisfied that any such agreement is unlikely within a reasonable time”.

. The Fifth Amendment provides in part: “No person shall * * * be subject for the same offense to be twice put in jeopardy of life or limb”. While the Federal guarantee against double jeopardy was initially deemed not to be fundamental and, therefore, not applicable to the States by means of “incorporation” into the due process clause of the Fourteenth Amendment (see Palko v Connecticut, 302 US 319), the Supreme Court decided otherwise in 1969 (Benton v Maryland, 395 US 784), making the right assertible against the States as well as the Federal Government. This court had already adopted that position three years earlier in People v Ressler (17 NY2d 174), mandating that New York’s “former jeopardy” laws (presently found in NY Const, art I, § 6; and CPL 40.20) be construed as extensively as the Federal constitutional guarantee.

. CPL 210.20 (subd 1) provides: “1. After arraignment upon an indictment, the superior court may, upon motion of the defendant, dismiss such indictment or any count thereof upon the ground that * * * (e) The prosecution is barred by reason of a previous prosecution, pursuant to section 40.20”.
CPL 40.20 (subd 1), in turn, states: “1. A person may not be twice prosecuted for the same offense.”

. [2] The remedy of prohibition — albeit extraordinary and normally appropriate only where a judicial or quasi-judicial official or body acts or attempts to act without or in excess of jurisdiction (Matter of B.T. Prods, v Barr, 44 NY2d 226, 231) — has traditionally been available to bar a retrial on double jeopardy grounds. (See Hall v Potoker, 49 NY2d 501, 505, n 1; Matter of Nolan v Court of Gen. Sessions, 11 NY2d 114.)