OPINION OF THE COURT
Chief Judge Wachtler.
In each of these cases, this court must decide whether a retrial following the declaration of a mistrial over defense objection violates the ban on double jeopardy, though it was the defendant who had originally requested the mistrial. In the first case, the defendant attempted to withdraw his application after it was granted; in the second, the defendant’s application was effectively denied, and the court later granted the People’s motion, made on the same ground, "on consent.”
I
In the first case before us, Arnold Catten was indicted for various drug and weapons charges, all arising from his sales of drugs to an undercover officer on two separate occasions, only the second of which is relevant to the issue raised on this appeal.
At a pretrial Wade hearing (Wade v United States, 388 US 218), the undercover officer testified that, at the time of the second sale, the defendant was clad only in a blue shirt and aqua shorts. After the sale, a backup team transported the defendant from the apartment in which it had taken place to *551 the precinct house and placed him in a lineup. The undercover officer further stated at the hearing that he identified as the seller the defendant, who was wearing the same clothing in the lineup that he had been wearing in the apartment.
At trial, the undercover officer repeated the substance of his testimony at the Wade hearing. However, a member of the backup team testified for the People that, although the defendant was wearing his underwear in the apartment when the officer entered after the second sale, he had allowed the defendant to put on his street clothes, consisting of pants and a jacket, before being transported to the precinct house. When first placed in the lineup and viewed by the undercover, the defendant was still in his street clothes. However, the defendant’s outer clothing was removed at some point during the lineup, revealing a blue T-shirt and aqua shorts, after which the undercover officer made the identification.
At the conclusion of the testimony of the backup officer and another witness for the People, counsel and the court held an off-the-record conference in the absence of the jury, and recessed for lunch. When court reconvened, defense counsel moved, in the presence of the defendant but outside the hearing of the jury, for a mistrial based on the backup officer’s account of the precinct house identification procedure. The court concluded that the prosecutor, whether intentionally or not, had misled the jury, and that there was no way he could purge the jury’s deliberations "of the fact that the identification of the defendant, on [the date of the second sale and precinct house lineup], depended on the fact that he was dressed the same way as he was in the apartment, at the same time he saw him * * * The motion is granted.” An off-the-record discussion between counsel and the court followed, after which the court stated: "I’ve granted your motion. The motion is granted. Mistrial.” Following further off-the-record discussion, defense counsel stated: "Your Honor, if I may, I have had some time to discuss this matter with my client and he informs me that he wants me to withdraw that motion,” adding that he had not had time to discuss the matter with his client before the motion was made. The court found he had ample time for discussion, however, and stated that the motion could not be withdrawn.
Following a second Wade hearing and trial, a jury convicted Catten of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in *552 the third degree and the court imposed sentence. A divided Appellate Division reversed that judgment, vacated the conviction, dismissed the indictment, and remitted for entry of a sealing order pursuant to CPL 160.50.
II
In the second case before us, an indictment charged defendant John Murphy with manslaughter in the first degree and criminal possession of a weapon in the third degree. This resulted from a dispute in his clothing store with Perry Hazard, during which, after Hazard displayed a knife, defendant shot him several times, inflicting injuries that later caused his death.
At trial, the People’s only eyewitness was Felita Lee, a friend and part-time employee of Hazard. On direct examination, the prosecutor asked her if she had a problem with the defendant two days before the incident, and she replied that he had offered her a free jacket if she would "come in the back” of the store with him. After Lee was asked, and she answered, two more questions, defense counsel moved for a mistrial outside the hearing of the jury. The court replied: "At this point your application will be denied. You can proceed further as soon as we finish with this witness.”
On cross-examination, Lee gave testimony which tended to support the defendant’s claim of justification. After extended colloquy concerning the admissibility of a related written statement, the prosecutor stated, in the absence of the jury:
"Your Honor, I agree with Mr. Mason [defense counsel] and I regret that this occurred but I think there has been a very serious, serious error made at this trial to the detriment of the defendant. I unfortunately did not know what this kid was going to say and I’m partly to blame and I must accept responsibility.
"What I was attempting to elicit because there was a nature of a claim here of self defense, that there had not been prior altercations between these two men, and when she said that Perry told her to stay away from him, it appears from that answer that Perry had had some problem with Murphy. And I asked the following question that I didn’t know the answer was and quite frankly, I thought the question might be objected to, but I didn’t know.
"I didn’t know that the witness was going to make a statement about being asked to be brought into the back *553 room. I had never heard anything about that at all, and I have not spoken to this witness prior to today, since the Grand Jury. I think that statement that the defendant attempted to bring a child into the back room of his home is highly prejudicial and I don’t know what I can do about it.
"the court: You joining in the application?
"mr. ferguson: Your Honor, reluctantly I think that mistrial must be appropriate, if Your Honor is in agreement that it’s that prejudicial.
"the court: I’ll grant the application, the defendant’s application for a mistrial. * * * I’ll discharge this jury.”
Ms. Lee and her mother were advised that the trial was not to continue then but that Ms. Lee should remain available to the prosecution. Defense counsel stated he wanted to speak with his client before the witness left, adding that "[i]t may very well be that I will withdraw the application.” The following occurred:
"the court: It’s too late. It was granted.
"mr. mason: * * * I’m very, very concerned about two things. One is the rapidity in which the application was granted over no objection, which causes me some concern.
"the court: It was not over no objection. It was on consent. You both made the application. Of course, it was granted.
"mr. mason: I am further concerned about the fact that the application has been granted because I think, very frankly, that the Prosecutor probably had some feelings about how this case was going.
"For all of those reasons, I would withdraw the application, ask for a proper instruction of the Court and let us proceed. By now, I would request an adjournment.
"the court: Well, at this point, it’s a little late to withdraw your application. You made your application. It was granted, joined in by the District Attorney, and I granted it on the record. [Mis]trial has been granted.”
At a second jury trial, Murphy was convicted of manslaughter in the second degree and criminal possession of a weapon in the third degree and sentence was imposed. The Appellate Division unanimously affirmed the judgment, without opinion.
Ill
The Double Jeopardy Clauses of both the Federal (US Const *554 5th Amend)[1] and State (NY Const, art I, § 6)[2] Constitutions prohibit a person’s being placed in jeopardy twice for the same offense. Thus, retrial will be barred after the declaration of a mistrial without the defendant’s consent unless "it is physically impossible to proceed with the trial in conformity with law” (CPL 280.10 [3]) or there was "manifest necessity” for the mistrial, or "the ends of public justice would otherwise be defeated” (United States v Perez, 9 Wheat [22 US] 579, 580; cf, Richardson v United States, 468 US 317, 323-324). However, if the defendant waives his double jeopardy protections, which include, after the jury has been impaneled and sworn, the " 'valued right to have his trial completed by a particular tribunal’ ” (Oregon v Kennedy, 456 US 667, 671-672; Illinois v Somerville, 410 US 458, 466, quoted in People v Ferguson, 67 NY2d 383, 388), by moving for a mistrial, retrial generally is not barred, regardless of whether there was manifest necessity for the mistrial (United States v Scott, 437 US 82, 93, reh denied 439 US 883; People v Ferguson, 67 NY2d 383, 388, supra; Annotation, Double Jeopardy — Retrial after Mistrial, 98 ALR3d 997, 1007, § 3). In each of the cases now before the court, therefore, we must determine whether the mistrial was granted on the defendant’s consent, and, if not, whether there was a manifest necessity for the declaration.
IV
Defendant Catten moved for a mistrial some time after the backup officer’s testimony suggested that the undercover officer may have been unable to identify him until he removed his outer clothing, revealing the underwear in which he was clad at the time of the sale. The motion was granted, and if that were the end of the matter, it would be clear that, regardless of whether there was manifest necessity for the mistrial, retrial would not be barred. However, immediately *555 after the application, made by counsel on the defendant’s behalf, was granted, counsel sought to withdraw it to conform with the then-expressed wishes of his client. We conclude that the trial court did not err as a matter of law in denying the request to withdraw the application.
Preliminarily, the motion was properly before the court and the court, in declaring a mistrial, ruled upon it. We reject the Appellate Division majority’s characterization of the ruling as "merely an expression of opinion” (119 AD2d, at 449) because the jury had not yet been discharged. The pertinent statutory provision does not require discharge of the jury to "perfect” the grant of a motion for a mistrial. CPL 280.10 contemplates only a declaration of mistrial and ordering of a new trial in response to a meritorious motion for a mistrial. (See also, CPL 310.60 [1] [c], which provides that a "deliberating jury may be discharged by the court without having rendered a verdict only when * * * [a] mistrial is declared pursuant to section 280.10”.) Thus, the statutory scheme contemplates a two-step process: declaration of a mistrial, at which time the motion has been granted, followed by discharge of the jury.
Whether to allow a defendant to withdraw his mistrial application after it has been granted is a matter committed to the discretion of the trial court (Matter of Napoli v Supreme Ct., 33 NY2d 980, affg on opn at 40 AD2d 159, cert denied 417 US 947). This, of course, is to be distinguished from the motion not yet ruled upon, which a party may withdraw, provided nothing has occurred to prejudice the opposing party (People v McGrath, 202 NY 445, 453; Cardenas v Superior Ct., 56 Cal 2d 273, 363 P2d 889).
The ground proffered by defense counsel in support of his motion was that he had not had adequate time to discuss the matter with his client before moving for the mistrial. However, the court found, as a matter of fact, to the contrary, and its finding was undisturbed by the Appellate Division. If there is support in the record for it, that finding is binding on this court (People v Ferguson, 67 NY2d 383, 389, supra). Here, the record amply supports the Trial Justice’s conclusion that counsel had ample time to discuss this matter with his client. The motion for a mistrial came not at the time of the backup officer’s allegedly damaging revelations, but after he and another witness had finished testifying. Moreover, defense counsel stated on the record that he had discussed the matter off the record with the court and the prosecutor before the *556 lunch break, and his motion was not made until after that break.
Even if counsel had not discussed his intention to move for a mistrial with his client, despite the ample opportunity he had to do so, that would not invalidate the application. As we noted in People v Ferguson (67 NY2d 383, 389-390, supra), a defendant need not agree with counsel, or even be in the courtroom when counsel moves for a mistrial, for the motion to be binding on him.
Here, given the court’s proper rejection of the proffered reason for the withdrawal request, denial of the request itself was not an abuse of discretion as a matter of law. The Appellate Division therefore erred as a matter of law in concluding that the trial court "was not warranted in declaring a mistrial over the expressed desire of defendant to go ahead with the trial” (119 AD2d 447, 449, supra). However, that court possesses the same discretionary power as the trial court and can, if so advised, substitute an exercise of its own discretion for that of Criminal Term even absent an abuse by the trial court (People v Rickert, 58 NY2d 122, 132-133). Therefore, in People v Catten, the order of the Appellate Division should be reversed and the matter remitted to it for consideration of whether to substitute an exercise of its own discretion for that of the trial court in denying the defendant’s application to withdraw his application for a mistrial, and consideration of other issues not reached on defendant’s appeal to that court.
V
People v Murphy presents a far different situation. The defendant’s mistrial application was prompted by Lee’s disclosure, while testifying for the People on direct, of the defendant’s earlier offer of a jacket in return for sex. Though the trial court, in denying the motion, stated the defense could proceed further with the application at the conclusion of Lee’s testimony, the record is clear that the motion then made was then denied.
The defendant then had no choice but to continue with the trial. To request that his motion be withdrawn would have been an empty formality; having been denied, there was nothing outstanding at that time to withdraw. When the prosecutor “joined” the earlier mistrial motion after Lee’s testimony on cross-examination had bolstered the defense *557 claim of justification, there was nothing to join. Indeed, a realistic view of the proceedings suggests that the People may have subsequently requested a mistrial because the prosecutor perceived an error had been made which weakened his, not the defendant’s, case.[3]
However, at that time, and indeed since the denial of his own earlier mistrial motion, the defendant possessed the " ' "valued right to have his trial completed by a particular tribunal” ’ ” (Illinois v Somerville, 410 US 458, 466, supra; see also, United States v Dinitz, 424 US 600, 609). We agree with the courts which have held that a mistrial motion is no longer pending after it is denied and additional proceedings take place (Braxton v United States, 395 A2d 759, 766-769 [DC App]; State v Flick, 495 A2d 339 [Me]), as well as those which have held that the defense must be given an opportunity to withdraw a mistrial motion if circumstances have changed between the time the motion is denied and when it is granted (United States ex rel. Russo v Superior Ct., 483 F2d 7, 17 [3d Cir], cert denied 414 US 1023; Jones v Commonwealth, 379 Mass 607, 400 NE2d 242, 251).[4]
We reject the People’s attempt to distinguish these authorities on the grounds that here the defense motion was not unequivocally denied and had not been withdrawn, and that the court later granted the mistrial on the grounds the defendant had urged, though at the prosecutor’s prompting, *558 thus rendering the mistrial grant on consent. As already noted, we conclude that the defense motion, though subject to renewal as any other, was denied and that, having been denied after consideration of the events which prompted it, it . did not have to be explicitly withdrawn. Moreover, the prosecutor’s and court’s avowed reliance upon those grounds is immaterial — what is material is that the motion was granted after a material change in position following the defendant’s earlier motion which had been denied. Under such circumstances, given that he registered his objection as soon as possible, it cannot be said that Murphy consented to the mistrial. Needless to say, appellate review in such situations would be facilitated if, immediately after a motion for mistrial is made and all parties are heard, the court clearly and unconditionally states its decision on the record.
A defendant can only be retried following a mistrial declared without his consent if there was manifest necessity for discontinuing the trial. Whether to order a mistrial rests in the sound discretion of the court, and when that discretion is properly exercised it will be held that there was manifest necessity for the declaration. However, here that discretion was abused when the court summarily rejected defense counsel’s request for a curative instruction, which has been held to preclude the mention of uncharged crimes from constituting reversible error (see, People v Santiago, 52 NY2d 865, 866).
The mistrial in Murphy’s case was declared without his consent and absent a manifest necessity. It therefore follows that his rights not to be placed in jeopardy were violated by the retrial. The order of the Appellate Division affirming his conviction should, therefore, be reversed, the conviction vacated and the indictment dismissed.
Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
In People v Catten: Order reversed and case remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein.
In People v Murphy: Order reversed, conviction vacated and indictment dismissed.

.The Federal Constitution’s Double Jeopardy Clause provides: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb”. It has been held applicable as a limitation on the power of the States, as well as the Federal Government, by incorporation into the Due Process Clause of the Fourteenth Amendment (see, Benton v Maryland, 395 US 784).

. The New York State Constitution’s Double Jeopardy Clause provides: "No person shall be subject to be twice put in jeopardy for the same offense”. Article 40 of the Criminal Procedure Law also contains certain prohibitions on multiple prosecutions, none of which is at issue on this appeal.

.This characterization of the events preceding the declaration of mistrial is not meant to suggest that the People had a valid ground for a mistrial motion. The circumstances governing such a motion by the People are limited by statute (see, GPL 280.10 [2], [3]).

.In so holding, we are aware of cases such as People v Montlake (184 App Div 578, disapproved on other grounds in People ex rel. Brinkman v Barr, 248 NY 126, 129); State v Wolak (33 NJ 399, 165 A2d 174, cert denied 365 US 822); United States v Goldstein (479 F2d 1061, cert denied 414 US 873), and United States v Pappas (445 F2d 1194, cert denied sub nom. Mischlich v United States, 404 US 984), each of which rejected a defense claim that a mistrial granted after a defense request was without the defendant’s consent and therefore did not bar retrial regardless of whether there was manifest necessity for the declaration. Unlike the Murphy case before us, however, in none of the cited cases did the defendant object to the court’s ruling or attempt to withdraw his prior application on any ground. In United States v Goldstein (supra), and United States v Pappas (supra), it does not appear that circumstances had materially changed between the defendant’s motion and the court’s declaration of a mistrial. Both State v Wolak (33 NJ, at 402-403, supra) and People v Montlake (184 App Div, at 582-583, supra) in fact strongly suggest the result would have been different had the defendant objected, as Murphy did, to the court’s declaration or then attempted to withdraw the earlier application.