82 N.Y.2d 226 (1993)
624 N.E.2d 162
604 N.Y.S.2d 34
The People of the State of New York, Respondent,
v.
Lamonte Dawkins, Appellant.
Court of Appeals of the State of New York.
Argued October 12, 1993.
Decided November 16, 1993.
David Loftis, New York City, and Philip L. Weinstein for appellant.
Charles J. Hynes, District Attorney of Kings County, Brooklyn (Sholom J. Twersky and Roseann B. Mackechnie of counsel), for respondent.
Chief Judge KAYE and Judges SIMONS, BELLACOSA and SMITH concur with Judge LEVINE; Judge HANCOCK, JR., dissents and votes to reverse in a separate opinion in which Judge TITONE concurs.
*228 LEVINE, J.
Defendant was tried on counts of attempted murder in the second degree, assault in the first degree and criminal possession of a weapon in the second degree, arising out of the alleged shooting of the victim on a subway train in Kings County. After one day of deliberation, the jury returned a verdict finding defendant guilty of attempted murder and not guilty on the remaining counts. At defendant's request, the court had the jury polled individually. The first three jurors affirmed their agreement with the verdict as announced. At that point, there was an outburst by the defendant protesting his innocence, whereupon juror number 4, after a brief hesitation, expressed her disagreement with the verdict. The trial court then directed the jury to retire to continue its deliberations.
Approximately three hours after the jury had resumed its deliberations, it sent a note to the court that "[t]he jury cannot reach a verdict. Please instruct". Defense counsel opposed the prosecution's request that the court give the jury an Allen charge (Allen v United States, 164 US 492) and moved for a mistrial on the ground that an Allen charge would put undue pressure on the single juror who had disagreed with the guilty verdict previously announced. The court agreed, making the following ruling on the minutes:
"While I have never accepted this kind of a note from the jury the first time and have in the past always given an Allen charge on the first note, I just find that the circumstances in this case do warrant the granting of a mistrial at the request of defense counsel. And, defense counsel in this case has requested that I declare this a hung jury and grant a mistrial and I'm going to do it, under the circumstances that we have in this case."
After an off-the-record discussion, an agreement was reached on scheduling defendant's retrial. Shortly thereafter, however  approximately 40 minutes after the jury's previous *229 communication and without the jury ever being recalled, instructed to cease deliberations and discharged  the jury sent a note to the court that it had reached a verdict. The court determined to set aside the previous mistrial determination and accept the verdict over defendant's objection "of the prejudice that it gives the jury". The jury foreperson then again announced a verdict convicting defendant of the attempted murder count of the indictment and acquitting him on the remaining counts. Upon individual polling, all of the members of the jury agreed.
The Appellate Division affirmed, concluding that it was an appropriate exercise of the trial court's discretion to set aside its previous mistrial ruling when the jury, without further instructions, communicated that it had reached a verdict (186 AD2d 751). A Judge of this Court granted defendant leave to appeal, and we now affirm.
Defendant's principal argument on appeal is that, under CPL 280.10 and this Court's decision in People v Catten (69 N.Y.2d 547), the trial of defendant on the indictment had terminated when the trial court "perfect[ed]" (id., at 555) its grant of a motion for a mistrial by a declaration of a mistrial and an order for defendant's new trial (see, CPL 280.10, first unnumbered para). The trial having thereby been terminated, defendant further argues, the trial court was divested of any further power to rescind its declaration of a mistrial.
We are unpersuaded by defendant's argument that the trial was terminated when the trial court declared a mistrial and fixed a date for retrial. First, CPL 280.10, the provisions of which are the cornerstone of defendant's argument that a mistrial was perfected thereby terminating defendant's trial, is entirely inapposite to the undeniable procedural context in which the mistrial was declared in this case, i.e., one based upon jury deadlock. As previously quoted, the Trial Judge in declaring the mistrial stated "defense counsel in this case has requested that I declare this a hung jury and grant a mistrial and I'm going to do it" (emphasis supplied). The authority of the trial court to grant a mistrial pursuant to CPL 280.10 is expressly limited to the following circumstances: "[u]pon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives him of a fair trial" (CPL 280.10 [1]); "[u]pon motion of the people, when there occurs during the trial, *230 either inside or outside the courtroom, gross misconduct by the defendant or some person acting on his behalf, or by a juror, resulting in substantial and irreparable prejudice to the people's case" (CPL 280.10 [2]); and "[u]pon motion of either party or upon the court's own motion, when it is physically impossible to proceed with the trial in conformity with law" (CPL 280.10 [3]). None of the foregoing circumstances forms the basis for the trial court's declaration of a mistrial here, the sole expressed reason for which was the jury's deadlock.
For the termination of a trial based upon jury deadlock the Criminal Procedure Law clearly provides that the operative judicial action is the actual discharge of the jury after "[t]he jury has deliberated for an extensive period of time without agreeing upon a verdict * * * and the court is satisfied that any such agreement is unlikely within a reasonable time" (CPL 310.60 [1] [a]).
As a respected commentator on the Criminal Procedure Law has pointed out, discharge of the jury under CPL 310.60 is the exclusive method to terminate a criminal trial for jury deadlock. "This section [CPL 310.60] is designed to govern mistrials based primarily upon the inability of the jury to reach a verdict  i.e., deadlock. For sections dealing with mistrials under other circumstances, see CPL §§ 270.35, 280.10" (Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 310.60, at 764; emphasis supplied). This view is confirmed by the staff comments of the State of New York Temporary Commission on Revision of the Penal Law and Criminal Code in referring to the provision (section 145.10) that became CPL 280.10: "[t]his motion is primarily applicable to discharge of a jury prior to its retirement for deliberation; discharge during deliberation is largely controlled by [present CPL 310.60]" (Staff Comment, NY Temp Commn on Revision of Penal Law and Crim Code, reprinted in proposed NY Criminal Procedure Law § 145.10, at 216 [1967]).
It follows from the foregoing that any declaration of a mistrial for, in the Trial Judge's own words, a "hung jury", was inchoate and thus, subject to recision by the court until it took the next step that was statutorily required under CPL 310.60 to effectuate the termination of the trial because of jury deadlock, i.e., discharge of the jury after the court determined that the jury could not reach a verdict within a reasonable time (see, Matter of Lionel F., 76 N.Y.2d 747, 749). Indeed, in Matter of Lionel F., we held that the unterminated, *231 still pending status of the entire juvenile delinquency proceeding permitted the Family Court to revoke its granting of dismissal, at the end of the petitioner's case, of several counts of the delinquency petition and reinstate some of those counts, over a double jeopardy objection (see, id.). Here, the statutory framework even more clearly shows that the trial had not terminated before the court revoked its mistrial decision.
Our holding in People v Catten (69 N.Y.2d 547, supra) is not inconsistent with the foregoing conclusion. In Catten the mistrial was granted on the defendant's motion because of misleading discrepancies in the testimony concerning the identification of the defendant by the undercover officer who allegedly purchased drugs from him (id., at 551). Clearly, this was a motion granted for "an error * * * in the proceedings * * * which [was] prejudicial to the defendant and deprive[d] him of a fair trial" (CPL 280.10 [1]). Our holding in Catten, that the grant of the mistrial motion was perfected under CPL 280.10 when the mistrial was declared and a new trial was ordered, does not apply to a mistrial necessitated by jury deadlock which, as we have concluded, is exclusively accomplished by discharge of the jury pursuant to CPL 310.60 (1) (a).
In any event, contrary to defendant's contention, People v Catten (supra) does not stand for the proposition that perfection of the grant of a defendant's mistrial motion under CPL 280.10 terminates a criminal trial, thereby divesting the trial court of any authority to rescind the grant of a mistrial. As we pointed out in Catten, before there was a final termination of the trial "the statutory scheme contemplates a two-step process: declaration of a mistrial, at which time the motion has been granted, followed by discharge of the jury" (id., at 555). In Catten, the defense request for withdrawal of its mistrial motion came after the mistrial had been perfected, but before the jury was discharged. Accordingly, we held in Catten that the trial court retained discretion to allow the defendant to withdraw his mistrial application (id.).
Finally, we reject defendant's alternative contention that it was an abuse of discretion as a matter of law for the Trial Judge to have rescinded its declaration of a mistrial and accepted the jury verdict. The record reflects that the court's primary concern, when it granted the mistrial upon receiving the jury's note that it was unable to reach a verdict, was that any additional instruction urging the jury to make a further attempt to reach unanimity would put undue pressure on *232 juror number 4, the juror who had dissented from the jury's prior announcement of a guilty verdict. When, very shortly thereafter, the jury indicated that it had reached a verdict without any such additional instruction, the court's sensitive concern regarding any potential coercion of that juror was obviated. The court again polled the jury to insure that in fact the verdict was the free decision of each juror and, at sentencing, noted that it did not observe any reluctance on the part of juror number 4 or any other juror when each of them was individually polled. The trial court was in the best position to assess all the circumstances pertinent to whether a fair verdict could be rendered by the jury, including observing the demeanors of the individual jurors (see, Matter of Plummer v Rothwax, 63 N.Y.2d 243, 250). We find no basis to upset the trial court's exercise of discretion here.
Accordingly, the order of the Appellate Division should be affirmed.
HANCOCK, JR., J. (dissenting).
I would reverse and grant a new trial. This Court's decision is founded squarely on a mistaken assumption: that the grant of the mistrial was based "upon jury deadlock" (majority opn, at 229). The majority reasons  seizing solely on the trial court's use of the term "hung jury"  that the mistrial could not have been granted under any subdivision in CPL 280.10. The trial court, the majority concludes, must have granted it under CPL 310.60 (1) (a) upon the ground that the jury could not agree and the court was satisfied "that any such agreement [was] unlikely within a reasonable time" (id.).
But a fair reading of the record  far from confirming the fact that the trial was aborted because the jury couldn't agree  shows plainly that the mistrial motion was made and granted because of the prejudicial effect that continued jury deliberations would have on defendant in view of the additional coercion and stress such deliberations would produce on juror No. 4. Thus, the mistrial was declared  clearly, in my view  not under CPL 310.60, but under CPL 280.10 (1) because of a legal defect in the proceedings "which [was] prejudicial to the defendant and deprive[d] him of a fair trial" (id.). That being so, the trial court, as defendant properly argues, was without power to undo the mistrial. Once the mistrial had been granted because of prejudice to defendant, the court could not simply continue the aborted trial as if nothing had happened by proclaiming that the prejudice which it had *233 discerned a half hour before had suddenly vanished. A review of the relevant portions of the record follows.

I

Defendant's First Mistrial Motion
The foreperson reported the jury's verdict in the early afternoon of the second day of deliberations. After some discussion concerning the possible repugnancy of the verdict, the court decided to accept it and, on request of defense counsel, directed that the jurors be polled. At approximately 1:35 P.M., during the polling, the following occurred with respect to juror No. 4:
"THE CLERK: Is that your verdict, Juror 4? (Pause.) Is that your verdict, Juror 4?
"THE DEFENDANT: Please don't send me away. I didn't do this, man, this is  this is a mistake.
"THE COURT: I do not want to hear you make any statement. Do you understand that?
"Instruct your client that he's not to make any statements in this courtroom at this time.
"MR. LESTER: Your Honor, I did.
"THE CLERK: Juror 4, would you please respond to the question of whether the verdict as announced by the foreperson and as announced and as recorded is the same verdict as your own personal verdict in this case. (Pause.)
"MR. LESTER: Judge, may we approach?
"THE COURT: No. I would like a response from Juror Number 4.
"JUROR NO. 4: No.
"THE COURT: No? At this time I'm going to direct the jury go back into the jury room and continue your deliberations.
"MR. LESTER: Judge, before you send them back, may I make a motion not in the presence of the jury?
"THE COURT: The jury will first step out at this time as instructed. (Jury excused.)
"THE COURT: I'll hear you now.
"MR. LESTER: Judge, the pressure on this juror is so *234 obvious. I would request this Court at this time to declare this a mistrial. The pressure on her is going to be incredible on her back in the jury room. It's obvious in all good conscience she cannot go along with this verdict, and to put that kind of pressure on her is unfair, and it will end up ultimately being unfair to my client.
"I would request the Court to declare this a mistrial.
"THE COURT: Motion denied" (emphasis added).
After the court's denial of the motion, defense counsel noted on the record that juror No. 4 had taken "at a minimum, 20 seconds  closer to more like a minute  before she did say, in a low voice, `no'" and that she "was crying during the time when she gave her negative response".

Defendant's Second Mistrial Motion
At 4:20 P.M., the court was handed a note that the jury wanted five or six additional note sheets. Shortly thereafter, it received another note stating, "the jury cannot reach a verdict. Please instruct."
The prosecutor requested that the court give an Allen charge, but defense counsel "strongly object[ed] to issuing an Allen charge * * * in light of the fact that this is not the classical hung jury" (emphasis added). Defense counsel stated:
"MR. LESTER: * * * I believe right now the pressure on her must be incredible. I believe an Allen charge would only add to that which would allow a defective verdict to be rendered, in light of the fact that Juror 4 possibly would not agree with the verdict. There's no way for the Court to soften the language or make the language of an Allen charge appear less stringent. * * * This is not the classic Allen charge situation, where a jury just sends out a note saying that they're deadlocked. Now, the Court and all of us are aware of at least one individual who is in fact deadlocking the jury. I request the Court at this time declare a mistrial and  that's defense's request" (emphasis added).

Denial of the Allen Charge and Grant of Defendant's Motion
The communication to the effect that the jury could not *235 agree, it must be emphasized, was the first indication from the jury that it could not reach a verdict. In deciding to deny the prosecutor's request for an Allen charge and grant defendant's motion, the court stated:
"The jury did have a request for instructions on the law which was rather brief. Aside from that, we did receive a notice that a verdict was reached at 1:35 and now, approximately three hours later after I had to send the jury back because of the fact that at least one juror disagreed that the jury reached a verdict, the jury has now indicated that they cannot reach a verdict.
"While I have never accepted this kind of a note from the jury the first time and have in the past always given an Allen charge on the first note, I just find that the circumstances in this case do warrant the granting of a mistrial at the request of defense counsel. And, defense counsel in this case has requested that I declare this a hung jury and grant a mistrial and I'm going to do it, under the circumstances that we have in this case. Are both sides ready to proceed with trial tomorrow?" (Emphasis added.)

II
The record, I submit, unmistakably shows that: (1) defendant's mistrial motions were based on the prejudice that would result from the additional stress and coercion on juror No. 4 which would be entailed in further deliberations; (2) the court did not consider the situation to be a deadlocked jury warranting a mistrial under CPL 310.60 and, for that reason, did not follow its usual course of giving an Allen charge in response to the jury's first indication that it could not agree; and (3) instead, the court granted defendant's second mistrial motion because "the circumstances in this case [did] warrant the granting of a mistrial at the request of defense counsel".
It is unquestioned that once this mistrial had been declared under CPL 280.10 and a new trial was ordered (see, majority opn, at 229), the granting of the mistrial was complete (see, People v Catten, 69 N.Y.2d 547, 555). Had this been the typical grant of a mistrial because the court was "satisfied that [an agreement on a verdict was] unlikely within a reasonable *236 time" (CPL 310.60 [1] [a]) (which, I submit, the record shows it was not), the court could arguably have come to a different conclusion and retracted its earlier order when it later developed that the jurors had resolved their differences and reached a verdict. In such a hypothetical situation, there would have been no indication of pressure or stress on a particular juror and no resulting danger of a coerced verdict from further deliberations. But, that is not this case.
Here, the court unquestionably recognized from what had transpired in open court  i.e., juror No. 4's initial failure to answer, her delay in finally responding "No", her manifestation of emotional distress and the fact that she was crying  that there was a danger of a coerced verdict from compelling juror No. 4 to undergo more pressure from the other jurors and that continued deliberations would be "prejudicial to the defendant and deprive[] him of a fair trial" (CPL 280.10 [1]). Where, as here, the court concludes that continuing deliberations will deprive defendant of a fair trial because of the likelihood of coercion on a juror, it is difficult to see how the very action that produces the danger of coercion  i.e., continued deliberation  can obviate the danger. Yet, this seems to be the majority's reasoning in equating the case with the usual hung jury mistrial and assuming that, during the half hour that elapsed after the court granted the motion, the pressure on juror No. 4 had been alleviated and that the jury was able to reach a fair verdict free from coercion. Manifestly, it is equally likely, perhaps more so, that what defense counsel and the court feared might happen did in fact happen  that juror No. 4 succumbed to the continued pressure and rendered a verdict that did not represent her considered judgment based on the evidence and the law.
What took place in the jury room after the court granted the mistrial and ordered a new trial will never be known. What is clear is that the court had concluded from its assessment of the circumstances that the danger of a coerced verdict so seriously jeopardized defendant's fair trial rights as to warrant a mistrial. In my view, a retraction of that order  when there was reason to believe that continued deliberations would increase the pressure on juror No. 4 and the chances of a coerced verdict  constituted a serious deprivation of defendant's State and Federal constitutional rights to a fair trial (NY Const, art I, § 6; US Const 6th Amend; see, Matter of Plummer v Rothwax, 63 N.Y.2d 243, 253; People v Carter, 40 N.Y.2d 933, 934; *237 People v Faber, 199 N.Y. 256, 259; Arizona v Washington, 434 US 497, 509). I, therefore, dissent.
Order affirmed.