■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAMON APONTE, Appellant. [759 NYS2d 486] —Judgment, Supreme Court, New York County (Edward McLaughlin, J.), rendered May 30, 2001, convicting defendant, after a jury trial, of criminal sale of a controlled substance in the third degree and sentencing him, as a second felony offender, to a term of 6 to 12 years, reversed, on the law, and the matter remanded for a new trial.

Defendant was arrested following an undercover "buy and bust" operation and charged with selling $20 worth of crack cocaine to an undercover detective in a building located at 310 East 100th Street. After the detective left the building, he radioed the other members of his team and described the suspect as "male hispanic, white durag [sic], white shirt, blue jeans and white sneakers." (A "do rag" is a cloth, wrapped and

tied tightly around the head above the eyes and ears, covering the hair.) At trial, the detective testified that the suspect also wore a black baseball cap atop his do rag. The other police officers moved in and detained a group of Hispanic males in the vicinity of the drug sale, including defendant, who wore neither a white do rag nor a black hat. The undercover detective returned in a car to the area and did a "drive-by" identification of defendant as the seller, and defendant was then arrested. The identification was made at night, with street lights providing the only illumination, following a transaction that had lasted only a few minutes. The arresting officers conducted a search of defendant and of the vicinity, but did not find any of the premarked money that had been used in the drug purchase or any drugs.

The only real issue in the trial of the case was the reliability of the undercover detective's identification of defendant as the individual who sold him the drugs. The trial consisted of the testimony of two prosecution witnesses—the undercover detective and a second police officer involved in the operation—and one defense witness—a resident of the East 100th Street neighborhood who testified that defendant had been visiting her on the evening in question and that he left shortly before the police detained the group of Hispanic men. The testimony was completed in approximately three hours.

Following the court's charge, the jury began its deliberations. The jury sent out three notes, requesting that it be provided with specific exhibits and that certain testimony be read back. After approximately five hours of deliberations, the jury sent out its first deadlock note to the court. The court reconvened the jury and admonished it, in part, as follows: "I don't know what you expected when you signed on for jury service. You've heard me in one way or the other say I've been doing this for 18 years and this is jury deliberations. Continue deliberating. We await your verdict."

The jury returned to its deliberations without decision for the remainder of the day. During deliberations the next day, the jury requested a readback of the undercover detective's testimony regarding the time of the "actual sale." After more than five hours of further deliberation, the jury sent its second deadlock note to the court. The court called the jury back to the courtroom and, in a supplemental charge, instructed it in relevant part as follows:

"[t]he point of the process is to get a result. Something happened in this case. It was proven or not. The standard was met or it was not. The tree that fell made a noise or it didn't * * *.

Something hit the bell probably and with nobody around. Only you folks can tell us was there a gong, a ding, a ping or nothing * * * [I told] you what the law is to put you in a position to do what you said you would do when we started, which is to decide this case * * *. Something happened in this case. It was not a nonevent. The standard was met or it was not, and there is no other entity on the face of the earth [besides the jury] that can tell us what the answer is to that.

"Whether there is the rare occurrence—of course, it happens, but it is a rare occurrence—* * * of a jury unable to resolve a case is not a factual decision. It's a legal decision. It is not your decision. It is mine. We are nowhere near at the point where I would begin to consider the possibility that you folks might not be able to resolve this case. Continue your deliberations, please."

The trial court denied defendant's objection to the supplementary jury instruction, rejecting his contention that the instruction was an improper *Allen* charge (*see Allen v United States*, 164 US 492, 501 [1896]). Five minutes after the court gave its supplementary charge, the jury returned a verdict of guilty.

Defense counsel's objection included the assertion that the supplementary instruction "would lead [jurors] to feel that they were doing something improper" if they were "steadfastly holding to a firm conviction either way whether for a conviction or acquittal." Thus, contrary to the dissent's contention, this objection was preserved as it was made in sufficient time "to call the court's attention to and permit it to correct" (*People v Narayan*, 54 NY2d 106, 114 [1981]) the asserted error.

In discussing the preservation issue, the dissent concedes that the defense maintained that the *Allen* charge was coercive, but contends that defendant's request was that the jurors only be told that they could deliberate further. This misapprehends the import of the quoted language. Defense counsel, in taking exception to the supplemental charge, conveyed the essence of the need for a cautionary instruction that jurors should not abandon conscientiously held beliefs simply to reach a verdict, thus preserving the issue for appeal.

Defendant contends that the trial court's supplementary instruction was an "unbalanced" *Allen* charge (*see Allen v United States*, 164 US 492, 501 [1896]) that exerted improper pressure on the members of the jury to return a guilty verdict. We agree.

When faced with a deadlock, a trial court must decide whether to declare a mistrial or give the jury a supplementary instruction directing it to continue deliberating and try to reach

agreement, an instruction meeting the criteria set by the United States Supreme Court in *Allen v United States* (164 US 492, 501 [1896]). The decision as to which course to take is one committed to the trial court's discretion (*see Plummer v Rothwax*, 63 NY2d 243, 250 [1984]). Although the trial court stated that its supplementary instruction was not an *"Allen"* charge, that is essentially what it was (*see e.g. Smalls v Batista*, 191 F3d 272 [1999]). An appropriate *Allen* charge "encourage[s] the jurors to continue their deliberations in an attempt to reach a verdict" (*People v Shortridge*, 294 AD2d 182, 183 [2002], *lv denied* 98 NY2d 681 [2002]), but such a charge "must not attempt to persuade jurors to abandon their beliefs or convictions, must not attempt to coerce dissenting jurors to reach a particular verdict, and must not attempt to shame the jury into reaching any verdict" (*People v Cowen*, 249 AD2d 560 [1998]). In this case, the trial court's supplementary instructions failed to inform the jurors that, while they each should be open to considering the views of the others, no juror should feel compelled to abandon conscientiously held beliefs (*People v Alvarez*, 86 NY2d 761, 763 [1995]; *People v Ali*, 65 AD2d 513, 514 [1978], *affd* 47 NY2d 920 [1979]; *see also People v Nunez*, 256 AD2d 192 [1998], *lv denied* 93 NY2d 975 [1999]). Instead, the instruction simply stressed the need to "get a result." A charge that stresses the need for a verdict at the expense of the individual jurors' judgment mandates reversal (*People v Demery*, 60 AD2d 606 [1977]).

In addition to improperly emphasizing the need to come to a verdict, even at the expense of individual jurors' good-faith and strongly held beliefs, the trial court's *Allen* charge improperly sought to shame the jury into reaching a verdict by its suggestion that the jurors were failing in their duty to do what they "said" they would do "which is to decide this case." The coercive effect of the instruction was also exacerbated by the trial court's insistence that "[s]omething happened" in this case, "[s]omething hit the bell," and "[t]he tree that fell made a noise or it didn't," which may have misled the jury into believing that finding that a sale occurred necessitated a finding of defendant's guilt, when the key issue in the case was not whether or not there was a sale but whether defendant was the seller.

Finally, the court's admonition to the jury, after two days of deliberating over a three-hour trial, that it was "nowhere near at the point where I would begin to consider the possibility that you folks might not be able to resolve this case," added to the coercive impact of the instruction by presenting the jurors with the prospect of unending deliberations unless and until a

verdict was reached. The fact that the jury returned a verdict of guilty within five minutes of having received the supplementary instruction certainly suggests that the instruction had the desired effect of "getting a result."

It is true, as the dissent points out, that the adequacy of the *Allen* charge must be considered in conjunction with the original charge (*see e.g. People v Crawley*, 291 AD2d 310 [2002], *lv denied* 98 NY2d 674 [2002]). The objection in that case was that the trial court had failed to include in its *Allen* charge the instruction that the jurors were to consider the evidence against each defendant separately. That is very different from the issue presented here.

The trial court in this case did instruct the jury in the main charge that the verdict had to reflect the individual verdict of each juror. The court refused to include any such suggestion or instruction in any of its supplemental instructions. No case has been identified in which such a challenged omission was approved on the ground that the matter had been covered in the court's main charge. This Court, in *People v Ali* (65 AD2d 513, 514 [1978]) stated: "An *Allen* charge * * * is proper if it assists the jury in its deliberations by stressing the importance of reaching a verdict without forcing any juror to yield a conscientious belief * * * The charge here properly stressed the importance of each juror keeping an open mind to the arguments advanced by the others. But the court erred when it failed to balance that instruction by stressing that 'the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion' of the others. (*Allen v United States,* [164 US 492 at] 501.) In our view, this imbalance had a coercive effect upon the jury." (Citations omitted.)

In the present case, the overemphasis in the supplementary charge on getting a result, the suggestions that the jurors were failing in their duty, the insistence that the jurors should reach a verdict because "[s]omething happened," the threat of prolonged, potentially unresolvable deliberations, as well as the omission of the admonition cited in *Ali* (*supra*), all combined to overshadow the appropriate message in the original instructions. The combination of coercive instructions in this case compels the conclusion that the verdict cannot stand.

In light of the foregoing, we need not address defendant's additional claims that the prosecutor committed misconduct during summation and that his sentence was excessive. Concur—Mazzarelli, J.P., Rosenberger and Lerner, JJ.

Saxe and Sullivan, JJ., dissent in a memorandum by Sullivan, J., as follows: The majority finds that the court's supple-

mentary charge was unbalanced in violation of *Allen v United States* (164 US 492 [1896]) because it exerted improper pressure on the jurors to return a guilty verdict. I respectfully disagree.

Specifically, the majority holds that the court's supplementary instructions failed to inform the jurors that, while they should be open to the views of other jurors, no juror should feel compelled to abandon his/her conscientiously held beliefs. Significantly, however, as part of the charge-in-chief, the court instructed the jury as follows:

"[T]here is a rule that says when you can't change your mind during jury deliberations. You can change your mind during deliberations from an opinion you may have held[,] from an opinion you may have expressed, from an opinion you may have defended[,] even defended ardently. If somebody by virtue of logic, common sense and reliance on the record of this case can cause you to change a position you may have had, you cannot change your mind for a silly reason or a reason that you would be embarrassed about were it to become public. You can't say it's time to go. I've served as a juror. I'm finished. I'll go along with what anybody says. I just got to get out of here. You can't say I didn't like what you said. I'm out of here.

"The point is before the foreperson announces the collective verdict of the 12 voting jurors it has to be the individual verdict rather of each juror."

As the trial court noted in denying defendant's CPL 330.30 motion based on the allegedly coercive nature of the charge, the complained-of supplemental instruction "must be interpreted with the court's entire instruction and taken as a whole." While the majority takes the position that the objection to the lack of an admonition was preserved, it is clear that defense counsel's comments on which the dissent relies, when read in context, relate only to the objection that the language was coercive. There was no suggestion that an admonition be given; in fact, counsel stated that the jury "should have merely been told that they can deliberate longer and that [it] is a legitimate response for 12 people to say we cannot agree based on what we saw in this courtroom."

At the outset, it should be noted that, although defendant objected to the second supplemental charge on the ground it would be coercive on a "sole dissenting juror," he waited until after the jury had been discharged to complain of the lack of an admonition that the jurors not abandon their conscientiously held beliefs. At that point, it was too late to include such language. Thus, defendant has failed to preserve this par-

ticular claim for appellate review (CPL 470.05 [2]; *People v Narayan*, 54 NY2d 106, 112 [1981]). Nor did defendant specifically object to the court's remarks that "[s]omething happened" and that "[i]t was not a nonevent." These complaints are similarly unpreserved. In any event, none of defendant's arguments has merit.

In the face of a reported deadlock, a court may declare a mistrial if the jury has been deliberating for "an extensive period of time without agreeing upon a verdict" and only if "the court is satisfied that any such agreement is unlikely within a reasonable time" (CPL 310.60 [1] [a]). Such power, however, "must be exercised with the 'greatest caution, under urgent circumstances, and for very plain and obvious causes'; the authority to discharge the jury is limited to those situations where, 'taking all the circumstances into consideration, there is a manifest necessity for the act' " (*People v Baptiste*, 72 NY2d 356, 360 [1988], quoting *United States v Perez*, 9 Wheat [22 US] 579, 580 [1824]). Here, on the second day of deliberations, there was no "manifest necessity" for a mistrial (*see People v Samper*, 239 AD2d 191 [1997], *lv denied* 90 NY2d 910 [1997]), and defendant does not contend otherwise.

While, as *Allen* teaches, a court may not instruct the jury in such a way as to force individual jurors to relinquish a conscientiously held belief in order to reach a verdict, there is no precise yardstick to determine whether a charge is coercive. "[T]hose charges which stress the need for reasonableness and further consideration will be upheld, while those which stress the absolute need for a verdict at the expense of the individual juror's judgment mandate reversal" (*People v Demery*, 60 AD2d 606, 606 [1977]). It is proper for a court to "encourag[e] jurors to adhere to their oaths and make one final effort to review the evidence and reach a verdict one way or the other" (*People v Pagan*, 45 NY2d 725, 727 [1978]).

Significantly, as noted, the trial court, at the close of the charge-in-chief, stressed that no juror should ever abandon a conscientiously held belief during deliberations, admonishing them, in particular, "You can't say * * * I'm finished. I'll go along with what anybody. says. I just got to get out of here." Near the end of that charge, the court stated, "The point is" that the "collective verdict of the 12 voting jurors [must] be the individual verdict rather of each juror." The court also gave these instructions, in substance, during jury selection. Thus, the record, as a whole, refutes the claim that the court failed to instruct the jury not to abandon a conscientiously held belief. Since the matter was "thoroughly covered in the court's main

charge, which the jury is presumed to have understood and followed" (*People v Crawley*, 291 AD2d 310 [2002], *lv denied* 98 NY2d 674 [2002]), there was no need to reinstruct the jury on the subject in the supplemental charge (*id.; see People v Canty*, 60 NY2d 830 [1983]).

While the majority faults the trial court for refusing to include in the supplemental instructions any suggestion that the verdict had to reflect the individual verdict of each juror, it is noted that defense counsel did not request such an instruction, nor did he object to its absence.

The supplemental instruction never "minimized the importance of careful deliberations" (*People v Johnson*, 280 AD2d 366 [2001], *lv denied* 96 NY2d 831 [2001], quoting *People v Brown*, 276 AD2d 266, 267 [2000], *lv denied* 95 NY2d 961 [2000]). The court repeatedly made reference to the law, as explicated in the main charge, governing jury deliberations, telling the jurors that their task was to decide whether defendant's guilt had been proven beyond a reasonable doubt. Each reference to the burden of proof made it clear that the jury was free to conclude that the People had not satisfied the standard for conviction. The supplemental charge was balanced and at no point suggested that the jury reach any particular verdict.

The majority finds a coercive effect in the court's remarks that "[s]omething happened in this case," that "[s]omething hit the bell" and that "[t]he tree that fell made a noise or it didn't," which allegedly may have misled the jury into believing that a finding that a sale occurred necessitated a finding of guilt, especially where the key issue was not whether a sale took place but, rather, the identification of defendant as the seller. This reasoning isolates the remarks from their context. Immediately after saying that "[s]omething happened in this case," the court went on to state, "It was proven or not. The standard was met or it was not." Thus, the court was properly instructing the jury not only that it was to decide what happened but also whether the People had proven defendant's guilt. The instruction never suggested that the jury find defendant guilty; nor did it divert the jury's attention from the crucial issue of identification.

Contrary to the view of the majority, the supplemental charge did not shame the jurors into rendering a verdict. It did not single out any single juror or segment of the jurors. Nor could it have done so since none of the jurors' notes indicated what the vote was or why they had been unable to reach a verdict; it did not suggest to the jurors that they were failing

in their duty to decide the case. In exhorting the jurors "to do what [they] said [they] would do when we started," the court was merely providing stern words of encouragement to 12 citizens who, according to the jury's note, were "not able to come up with a unanimous decision." Such an instruction does not offend *Allen*. Nor did the instruction contain the kind of language found coercive in other cases (*see People v Faber*, 199 NY 256, 259 [1910]; *People v Riley*, 70 NY2d 523, 532 [1987] [court told jury that it, the court, "could have decided this case in ten minutes" or less]). And, it should be emphasized, the court never came close to saying that deliberations would continue "indefinitely" (*see People v Carter*, 40 NY2d 933, 934 [1976]), or that the jury would be sequestered (*see People v Baxter*, 232 AD2d 196 [1996], *lv denied* 89 NY2d 939 [1997]).

Nor can the supplemental instruction be deemed coercive merely because the jury returned a verdict five minutes after the second supplementary charge. The length of time between the disputed instruction and the jury's verdict is not, in and of itself, a proper gauge of a jury charge's possibly coercive effect (*see United States v Hynes*, 424 F2d 754, 758 [2d Cir 1970], *cert denied* 399 US 933 [1970]).

Finally, it should be noted, the complained-of charge did not include any exhortation that the jurors should try to convince each other of the superiority of their positions. The absence of any such instruction significantly distinguishes this charge from the one traditionally found to violate *Allen*. Thus, having properly instructed jurors on the point in the main charge, the failure to re-instruct the jurors that, while they should be open to the views of the other jurors, they should not abandon their conscientiously held beliefs did not render the court's supplemental charge coercive.

Review of defendant's other contentions reveals that they are without merit. Accordingly, the judgment of conviction should be affirmed.