■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD FERGUSON, Appellant.—Judgment affirmed. Memorandum: Defendant appeals from a judgment of conviction of second degree murder and primarily argues that the trial court's declaration of a mistrial during his first trial precluded his retrial for the same offense. From the sparse record it appears that during his first trial information was received by the Trial Judge that a trial juror had been injured in an automobile accident on the evening of the fourth day of trial and was in the hospital receiving treatment for his injuries. This was confirmed by unidentified hospital emergency room personnel who further advised that the juror was not available to speak on the phone. The Trial Judge announced to counsel in chambers that she was considering a mistrial since no alternate juror remained available. Following this conference in chambers, the Trial Judge, in open court and in the presence of the jury and counsel, informed the remaining jurors of the inability of the injured juror to continue the trial and *sua sponte* declared a mistrial. Defense counsel waived the presence of the defendant, but did not respond to the Trial Judge's inquiry as to whether the proposed action in declaring a mistrial was "agreeable" and otherwise remained silent.

The record gives no indication that the trial court considered the possibility of an adjournment to gather definite information concerning the injured juror's condition before ordering a mistrial. "Since the court did not consider, or have before it the facts necessary for thorough consideration of, an obvious alternative to a mistrial, we cannot say that there was a 'manifest necessity' to terminate the trial" *(United States v Smith,* 621 F2d 350, 351, *cert denied* 449 US 1087; *see, Matter of Enright v Siedlecki,* 59 NY2d 195, 200; *Matter of Wilson v Chesworth,* 96 AD2d 742). However, despite the absence of a "manifest necessity" a defendant cannot plead double jeopardy where the jury before which he was first on trial was discharged with his consent, which "need not be express, but may be implied from the totality of circumstances attendant on a declaration of mistrial" *(United States v Goldstein,* 479 F2d 1061, 1067, *cert denied* 414 US 873; *see, United States v Smith, supra; People v Lawton,* 127 Misc 2d 800).

Defense counsel did not object to the proposed mistrial nor suggest any alternative course of action and had twice previously during the course of the trial requested a mistrial based on other grounds *(see, Matter of Harris v Justices of Supreme Ct.,* 44 NY2d 874; *see also, United States v Grasso,* 552 F2d 46, 55-57 [Timbers, C. J., dissenting], *vacated* 438 US 901, *on remand* 600 F2d 342, *revd* 629 F2d 805). Moreover, in an affidavit in support of the motion to dismiss the indictment on double jeopardy grounds, counsel admitted that "while in Chambers [he] did state that the Judge must do what she feels must be done". This statement, which defense counsel sought to minimize as "not an *unqualified* consent to a mistrial" (emphasis added), plainly could have led the Trial Judge to believe that a mistrial was the desirable course to follow *(see, Riley v Commonwealth,* 190 Ky 204, 206, 227 SW 146, 147 [holding that defense counsel's statement that the court should "take whatever course he thought proper" was clearly indicative of an implied consent to discharging a juror]). In our view, it is clear from the totality of the circumstances that defense counsel impliedly consented to the mistrial.

Defendant was not present either in chambers during discussion of the possibility of a mistrial or in the courtroom when the court announced its decision to abort the trial. Although a defendant has a constitutional and statutory right to be present during the trial of an indictment (US Const, 14th Amend, § 1; NY Const, art I, § 6; CPL 260.20), his presence is not constitutionally required while counsel and the court discuss the advisability of declaring a mistrial *(see,*

*People ex rel. Lupo v Fay,* 13 NY2d 253, *mod* 13 NY2d 1178, *cert denied* 376 US 958), nor is defendant's personal consent to a mistrial required to eliminate any double jeopardy bar to retrial *(see, United States v Dinitz,* 424 US 600, 609, n 11 [standard of knowing, intelligent and voluntary waiver does not apply in double jeopardy cases based on mistrials]). Consequently, it is clear that the express or implied consent of defense counsel is binding on the defendant *(see, Adkins v Bordenkircher,* 674 F2d 279, 283, *cert denied* 459 US 853; *United States v Smith,* 621 F2d 350, 352, n 3, *supra; United States v Bobo,* 586 F2d 355, *cert denied sub nom. Rowan v United States,* 440 US 976). Because defendant, through his counsel, consented to the mistrial, the Constitution did not bar his retrial. We have considered the other issues raised by the defendant and find them to be without merit.

All concur, except Denman and O'Donnell, JJ., who dissent and vote to reverse the judgment and dismiss the indictment in the following memorandum.

Denman and O'Donnell, JJ. (dissenting). We agree with the majority that the circumstances herein did not present a case of "manifest necessity" for declaration of a mistrial. If the court had made further inquiry or explored alternative remedies, it may well have been possible to continue with the trial after a brief adjournment. Indeed, since defense counsel's subsequent investigation revealed that the missing juror was in fact released from the emergency room later that day with relatively minor injuries and may well have been available within a day or two if a continuance had been granted, there was clearly no "manifest necessity" for declaring a mistrial. Thus, the prohibition against double jeopardy precludes retrial unless it can be established that the mistrial was declared with the express or implied consent of defendant *(see, United States v Dinitz,* 424 US 600, 607-608; *United States v Jorn,* 400 US 470, 481; *Matter of Enright v Siedlecki,* 59 NY2d 195, 200; *People v Michael,* 48 NY2d 1, 9). It is the latter point on which we depart from the view of the majority.

The majority finds that the "totality of the circumstances" indicates that defense counsel impliedly consented to the mistrial. That conclusion is based on three factors: defense counsel's statement in chambers that "the judge must do what she feels must be done"; the fact that the defense had moved twice previously for a mistrial on other grounds; and defense counsel's purported waiver of defendant's presence and his right not to be placed twice in jeopardy. We adopt a different analysis with respect to each of those factors.

The majority concludes that defense counsel's failure to object to the declaration of a mistrial and his statement in chambers after being informed of the Judge's intention to declare a mistrial that "the judge must do what she feels must be done" constitutes an implied consent. First, we note that no record was made of the discussion in chambers so that the remark appears only as the recollection of defense counsel in an affidavit submitted two months later on a motion to dismiss the indictment on double jeopardy grounds. Secondly, the remark is clearly neutral, a statement of resignation, not acquiescence. Although concededly there is a lack of uniformity of opinion in this nebulous area, the weight of authority supports the view that, when the defense has done nothing to precipitate the events leading to the mistrial, such innocuous remarks and conduct do not constitute consent (see generally, What constitutes accused's consent to court's discharge of jury or to grant of state's motion for a mistrial which will constitute waiver of former jeopardy plea, Ann., 63 ALR2d 782, 790-795).

In the context of this trial, we consider the fact that defense counsel had moved twice previously for a mistrial on other grounds totally irrelevant to a determination of whether he consented to the declaration of mistrial at this stage of the proceedings. The two previous motions had been addressed to the composition of the jury and to remarks by the prosecutor during his opening statement. Those early objections do not diminish the possibility that, after four days of proof, the trial may have been progressing to defendant's advantage, thus entitling him to the protection of his "valued right to have his trial completed by a particular tribunal" (Wade v Hunter, 336 US 684, 689), which "he might believe to be favorably disposed to his fate" (United States v Jorn, 400 US 470, 486, supra).

"If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial. Thus, where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error. In the absence of such a motion, the Perez doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial

discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings. See *United States* v. *Perez,* 9 Wheat., at 580." *(United States v Jorn,* 400 US 470, 485, *supra.)*

Finally, and most compellingly, we disagree with the conclusion of the majority that defense counsel effectively waived defendant's presence as well as his right not to be placed twice in jeopardy. "In every criminal proceeding, a defendant has an absolute right to be present, with counsel, 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge' *(Snyder v Massachusetts,* 291 US 97, 105-106; *People ex rel. Bartlam v Murphy,* 9 NY2d 550, 553; *People v Tyler,* 14 AD2d 609; NY Const, art I, § 6)" *(People v Ciaccio,* 47 NY2d 431, 436; CPL 260.20). That right can, of course, be waived by the defendant; nevertheless, since the right is of constitutional dimension, any waiver must be measured by constitutional standards, i.e., it must be knowing, voluntary and intelligent in order to be effective *(see, Johnson v Zerbst,* 304 US 458; *People v Anderson,* 16 NY2d 282, 287; *People v Weathers,* 94 AD2d 964).

The majority relies on *People ex rel. Lupo v Fay* (13 NY2d 253) for the proposition that there is no constitutional requirement that defendant be present while the court and counsel discuss the possibility of a mistrial. In that case, defense counsel's motion for a mistrial was denied, defendant was convicted and his conviction was affirmed on appeal. On a petition for a writ of habeas corpus, petitioner contended that he had been denied a constitutional right because he was not present during argument on the mistrial motion. The court held that defendant's absence from the courtroom during legal argument for discharge of the jury did not affect a substantial right and did not invalidate the judgment of conviction. That case is thus in the reverse posture from the one before us. Here, by not being present to consult with counsel, defendant was not apprised of the effect of a mistrial and was deprived of an opportunity to object to his case being taken from the tribunal which he had selected. Inasmuch as the outcome was to place him twice in jeopardy, it clearly affected a substantial right and thus required his presence. *United States v Dinitz* (424 US 600, *supra)* is not to the contrary. *Dinitz* involved the declaration of a mistrial after the Judge had excluded one of defendant's two counsel from the trial for improper conduct and refusal to obey the court's instructions. The court suggested several alternatives which could be ·pursued and recessed overnight to allow defense counsel to apprise the defen-

dant of the various alternatives. Faced with the options of continuing the trial without his lead attorney or foregoing a jury possibly favorably disposed to his case, defendant, through his secondary counsel, moved for a mistrial and his motion was granted. On appeal from his conviction after a subsequent trial, the Court of Appeals for the Fifth Circuit reversed the judgment and held that the double jeopardy clause barred the second trial because there had been no manifest necessity requiring the attorney's expulsion and that defendant then was faced with the "Hobson's choice" of having to choose between going forward with counsel who had not prepared for trial or waiving his double jeopardy rights (504 F2d 854). The Supreme Court reversed, holding that even if defendant had been presented with a "Hobson's choice," the validity of his consent to a mistrial was not vitiated because he had retained primary control over the course to be followed. In response to defendant's further argument that he had not personally sought or consented to a mistrial, the court stated that defendant's personal consent is not required because the standard of knowing, intelligent and voluntary waiver is inapplicable in double jeopardy situations. There, however, the defendant was in fact present when his attorney sought a mistrial after having been given the opportunity to consult as to possible options. The court therefore was clearly able to find that defense counsel's actions bound defendant because his presence afforded him the ability to consult with counsel, be advised of his rights and presumably to agree to the action taken. Similarly, in the other authorities cited by the majority for the principle that the consent of defense counsel is binding on the defendant, defendant was present to consult with his attorney.

In contrast, the defendant here had not yet arrived in court at the time the mistrial discussions were taking place. When the Trial Judge and counsel emerged from chambers and the Judge was about to declare a mistrial, the following took place:

"THE CLERK: Your Honor, everybody is present but one juror and the Defendant.

"MR. OLSZEWSKI: Your Honor, I'd better look. Do you need him?

"THE COURT: I don't know if I need him. If you can find him, it would be better. [Whereupon, a brief recess was taken.] [After recess.]

"MR. OLSZEWSKI: Your Honor, he's coming in with Mr. Vinolus.

"THE COURT: We don't have to wait.

"MR. OLSZEWSKI: No. I waive the appearance of the Defendant, your Honor.

"THE COURT: That is fine at this point since nothing is happening except I am going to inform the jury what has happened. Is it agreeable with you?

"MR. PANEPINTO: Yes. Juror number 3 is not present."
Thus defendant had no knowledge of the impediment to continuing the trial, had no opportunity to consult with counsel as to the effect of a mistrial declaration and, in our view, cannot be deemed to have waived his right to be present nor to have consented to the declaration of a mistrial. (Appeal from judgment of Erie County Court, Wolfgang, J.—murder, second degree.) Present—Hancock, Jr., J. P., Callahan, Denman, O'Donnell and Schnepp, JJ. (Decided Oct. 1, 1985.)