In the Matter of NICHOLAS GUIDO et al., Petitioners, v CAROL BERKMAN, as Justice of the Supreme Court, New York County, et al., Respondents.

First Department, May 6, 1986

APPEARANCES OF COUNSEL

*Gino Josh Singer* of counsel *(Joseph R. Benfante, P. C.,* attorney), for petitioners.

*James G. Warwick* for Sterling Johnson, Jr., respondent.

**OPINION OF THE COURT**

Per Curiam.

Petitioners Nicholas Guido and Dominick LaTorre commenced this CPLR article 78 proceeding, in the nature of prohibition, seeking to bar their retrial upon New York County Supreme Court indictment number 2376A/84, and to dismiss the indictment. They primarily contend that retrial would violate their right under the 5th Amendment not to be placed twice in jeopardy for the same offense. On this sparse record we are unable to discern justification for the Trial Justice's *sua sponte* declaration of a mistrial. We are persuaded that no inference of acquiescence in the mistrial may fairly be drawn under these circumstances, and therefore grant the petition.

Petitioners Nicholas Guido and Dominick LaTorre were indicted, charged with criminal possession of a controlled substance in the second degree and related offenses (narcotics indictment). Additionally, Guido and LaTorre were separately indicted, charged with criminal possession of a weapon in the third degree, offering a false instrument for filing in the second degree, and criminal impersonation in the second degree (gun indictments). These charges stemmed from the petitioners' arrest while registered guests at the Vista International Hotel in lower Manhattan. The offenses set forth in the narcotics indictment were based upon an alleged discovery of cocaine and narcotics-related paraphernalia in petitioners' hotel room by police officers. Those set forth in the gun indictments were based upon the allegation that when they were arrested, Guido and LaTorre had handguns, and dis-

played copies of peace officer registration forms which had been filed with the Division of Criminal Justice, reflecting their membership in an allegedly fraudulent organization, the Sullivan County Society for the Prevention of Cruelty to Children. The three indictments were consolidated for trial, which began before Justice James J. Leff on June 26, 1985.

The jury heard the presentation of evidence for five days. On July 2, 1985, a Tuesday, the jury heard summations and the court gave instructions on the law. At approximately 4:00 P.M. that afternoon, the jury retired to deliberate. After a total of approximately 5½ hours of deliberation, excluding one hour of reread testimony and a dinner break at 11:23 P.M., the jury sent a note to the court which read as follows: "We have reached a verdict on 8 counts and are hung up on 4. It's unlikely that we will be able to reach a verdict on these."

In his affirmation in support of the petition, Guido's trial counsel states: "Upon information and belief, the trial prosecutor * * * remained in the courtroom, as had Justice Leff * * * Your affirmant, co-counsel, the petitioners and their respective families returned to the courtroom at approximately 11:25 p.m., after having been informed that some form of verdict had been reached * * * The trial court did not say anything * * * other than, in words or substance, that the trial court intended to bring out the jury and see what it had —prior to the time when the jury entered the courtroom." The District Attorney disputes this. He affirms that "Justice Leff indicated to counsel that he intended to take the entire verdict on all twelve counts, and not just the verdict on the eight counts whereon the jury had agreed. The People and counsel for both defendants agreed to this procedure". He also indicates that the Trial Justice had advised *the People* that he intended to accept the verdict and discharge the jury.

The Trial Justice neither made an inquiry of the foreperson to determine whether further deliberations would be availing nor read the note aloud for the record. The transcript of the proceedings reflects only that the jury announced its partial verdict of acquittal on each count contained in the narcotics indictment and on the count of offering a false instrument for filing in the first degree contained in the gun indictments. Following receipt of the partial verdict, the Trial Justice directed the court officers to "clear the courtroom". The District Attorney, counsel for the defendants, the defendants, and relatives of the latter stepped outside of the courtroom and waited. The court addressed the jurors, thanking them

for, and discharging them from, their service. When the parties and their attorneys reentered the courtroom the jurors were no longer present and the following transpired:

"THE COURT: Go back to Judge Berkman.

"[PROSECUTOR]: Any date that is convenient for counsel, what I suggest a September date.

"THE COURT: What date would you like?

"[DEFENSE ATTORNEY]: I didn't hear what you said.

"THE COURT: What date would you like? You still have a couple of counts. Any date you want.

"[DEFENSE ATTORNEY]: Your Honor, could we make motions?

"THE COURT: What kind of motions?

"[DEFENSE ATTORNEY]: I would like to make a motion—

"THE COURT: Off the record.

"(Whereupon the discussion was held off the record)

"(Whereupon, the following was taken in open court)

"THE COURT: September 10th."

In their respective affirmations, the District Attorney denies, and both trial counsel affirm, that Guido's trial counsel, Mr. Benfante, contended off the record, *inter alia,* that retrial was prohibited, based upon double jeopardy. The case was reassigned to the respondent Justice in Part 60 and adjourned. The petitioners' respective motions to dismiss the indictments, made before the respondent Justice, were reportedly denied, although no written decision, order, or other writing by her is presented on this record.

The respondent Justice granted several adjournments, then advised Guido, on numerous calendar dates, that the case could not further await the conclusion of Mr. Benfante's engagement in a lengthy trial in the United States District Court for the Southern District of New York involving alleged organized crime defendants. On December 5, 1985, Guido answered the calendar call in Part 60 and requested yet another adjournment. Respondent ordered a final trial date and doubled his bail. Guido posted the bail later that afternoon. This petition for a writ of prohibition ensued.

A hopelessly deadlocked jury presents the "classic case for a proper mistrial", and such a determination by a Trial Judge is accorded "great deference". *(Arizona v Washington,* 434 US 497, 510 [1978].) Yet, a reviewing court must ascertain whether the Trial Judge has declared a mistrial in the "sound exercise" of discretion. A cardinal feature of the scrupulous

exercise of judicial discretion is temperance based upon the exercise of care for the defendant's " 'valued right' " to have his trial completed by a particular tribunal. *(Arizona v Washington, supra,* at p 516; *Wade v Hunter,* 336 US 684, 689 [1949].) As the court explained in *United States v Jorn* (400 US 470, 486 [1971]): "[I]n the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." A corollary of this principle is the principle that a Trial Judge must confirm the genuineness of a jury's reported deadlock in open court by questioning the foreperson and inquiring concerning further deliberations. *(Matter of Plummer v Rothwax,* 63 NY2d 243, 252 [1984]; *Matter of Owen v Stroebel,* 102 AD2d 651, 653 [3d Dept 1984]; *accord, United States v Crosley,* 634 F Supp 28 [ED Pa 1985]; *Arnold v McCarthy,* 566 F2d 1377, 1387 [9th Cir 1978]; *Nelson v District Ct.,* 543 F2d 631, 632 [8th Cir 1976]; *United States v Larry,* 536 F2d 1149, 1153 [6th Cir 1976], *cert denied* 429 US 984 [1976]; *United States v Beckerman,* 516 F2d 905, 908 [2d Cir 1975].)

Applying these principles to the present case, we believe that justification for the mistrial is not adequately disclosed by the record. While the jury plainly and on its own initiative, as shown by its note, reached a consensus that agreement was unlikely on 4 of the 12 counts submitted to it, the Trial Justice did not make the purported deadlock a part of the trial record. The court omitted to make any inquiry of the foreperson and to inquire concerning further deliberations. On this sparse record, we cannot tell whether the court considered the benefit of a recess and resumed deliberations the following day. *(Matter of Plummer v Rothwax, supra; Matter of Owen v Stroebel, supra.)*

The discharge of the jury here was also violative of CPL 310.60 and 310.70. The Trial Justice did not state on the record his reasons for discharging the jury on the counts as to which it had, as yet, not reached a verdict, and the record does not substantiate the conclusion that there had been "extensive deliberations", or even that the court was satisfied that agreement upon the remaining counts was unlikely within a reasonable time. *(Matter of Tuite v Shaw,* 49 AD2d 737 [2d Dept 1975].)* In view of the five-day-long trial, 5½ hours was a relatively brief period of deliberation. The factual

issues appear to have been simple, and readily susceptible to resolution by the jury. *(Matter of Plummer v Rothwax, supra,* at p 251.)* We conclude that the People have failed to sustain their burden of demonstrating there was a "manifest necessity" for the declaration of a mistrial in view of the less drastic alternatives available, or that it was "physically impossible to proceed with the trial in conformity with law" under CPL 280.10 (3). *(United States v Perez,* 9 Wheat [22 US] 579, 580 [1824]; *Arizona v Washington, supra,* at p 505; *Matter of Colcloughley v Johnson,* 115 AD2d 58 [1st Dept 1985].)

Despite the absence of a demonstrable "manifest necessity", a defendant cannot plead double jeopardy where the jury which first tried him was discharged with his consent. His consent need not be express, but may be implied from the totality of circumstances attendant upon the declaration of a mistrial. *(People v Ferguson,* 115 AD2d 215 [4th Dept 1985].)* We find petitioners' version of the events which presaged the mistrial more convincing than that recounted by the People. We conclude that the petitioners did not consent to a mistrial, and that the failure of their counsel to raise an objection until after the jury's discharge is attributable to lack of opportunity. Petitioners' counsel were not on notice of an impending mistrial since the Trial Justice neither read the note aloud to defense counsel, nor advised defense counsel in advance that a mistrial would be declared and the jury discharged. While defense counsel apparently agreed with the trial court's determination to accept whatever verdict the jury had, they could reasonably have understood this procedure to mean the acceptance of a partial verdict, with a direction to the jury to continue deliberation on the remaining counts (CPL 310.70 [1] [b] [i]). They would not have assumed from this procedure that a mistrial was being declared. Absent other circumstances indicating petitioners' acquiescence, it would be unfair to infer their consent. *(See, Henderson v Wright,* 533 F Supp 1373, 1376 [D Me 1982].)* In view of our recognition of the validity of the double jeopardy defense, we find it unnecessary to reach petitioners' other contentions.

Accordingly, the petition should be granted and respondents prohibited from requiring petitioners to proceed to trial on the remaining counts of criminal impersonation in the second degree and criminal possession of a weapon in the third degree under indictment No. 2376A/84.

KUPFERMAN, J. P. (concurring in part and dissenting in

part). The opinion of the court fairly reflects the situation and the nature of the record. Because the record is "sparse" and there is a sharp dispute as to exactly what happened, before we reach the question of whether the petition in the nature of prohibition should be granted, we should hold the matter in abeyance and remand for a hearing as to exactly what occurred after the trial court received a note from the jury at almost midnight on July 2, 1985, shortly before a long Independence Day weekend.

SANDLER, SULLIVAN, ROSENBERGER and ELLERIN, JJ., concur; KUPFERMAN, J. P., concurs in part and dissents in part in an opinion.

Application for a writ of prohibition granted and respondents prohibited from requiring petitioners to proceed to trial on the remaining counts of criminal impersonation in the second degree and criminal possession of a weapon in the third degree under indictment No. 2376A/84.