◼ In the Matter of EDDY MARTE et al., Petitioners, v CAROL BERKMAN et al., Respondents. [895 NYS2d 376]—

Application pursuant to CPLR article 78 in the nature of prohibition seeking, on the ground of double jeopardy, to prevent retrial of petitioners before respondent Justice under New York County indictment No. 2420/08, denied, and the proceeding dismissed, without costs.

DeGrasse and Freedman, JJ., concur in a separate memorandum by Freedman, J.; Sweeny and McGuire, JJ., concur in a separate memorandum by McGuire, J.; Tom, J.P., dissents in a memorandum, as follow:

Freedman, J. (concurring). The original trial court was not compelled by manifest necessity to declare a mistrial and terminate the proceedings after two days of deliberations (*see Matter of Randall v Rothwax*, 78 NY2d 494, 498 [1991], *cert denied sub nom. Morgenthau v Randall*, 503 US 972 [1992]), because the court reasonably could have asked the jury to continue deliberating past 5:00 P.M. on the date the trial was terminated, a Friday. Although two of the jurors indicated that they had scheduling problems during the following week, the court had already directed them to report for deliberations on the following Monday. Moreover, the court failed to confirm that the jury was hopelessly deadlocked either by polling the jurors or by asking the foreperson in the presence of the jury whether a unanimous verdict could be reached in a reasonable amount of time (*see People v Duda*, 45 AD3d 1464, 1465 [2007], *lv denied* 10 NY3d 764 [2008]; *Matter of Guido v Berkman*, 116 AD2d 439, 443 [1986]).

However, the need for manifest necessity for the mistrial was obviated by petitioners' consent, which can be implied from the circumstances (*see People v Ferguson*, 67 NY2d 383, 388-389 [1986]). Defense counsel were aware and had discussed with the court that the jury sent a note on Friday morning stating that it was at an impasse on some counts, that later two jurors had

claimed that they could not resume deliberations the following week, and that there were no alternates available for substitution. After receiving a second note on Friday afternoon stating that the jury was at an impasse, the court stated that it was inclined to take a partial verdict and declare a mistrial as to the remaining counts, and asked counsel if they wished to be heard. One of petitioners' counsel said "no" and the other remained silent. Immediately thereafter, the court called in the jury, took a verdict of not guilty on the first two counts, and asked counsel if they had "anything for the record." After defense counsel again remained silent, the court thanked the jury for its service and discharged it. It was only at that point that defense counsel asked that the jury be held, and, after the court stated that it was declaring a mistrial "so[ ] that the record is clear," counsel first registered their objection. Under the circumstances, the court by its actions was carrying out its previously announced intention to terminate the trial. Defense counsel had been given ample notice of that intention and an opportunity to be heard. Accordingly, counsel's failure to object when the court invited them to speak, or at the latest before the jury was discharged, constituted implied consent sufficient to deny petitioners' application (*see id.* at 386-387, 389).

McGuire, J. (concurring). I agree the petition should be dismissed because petitioners (the defendants in the underlying criminal prosecution) implicitly consented to the mistrial. Additional discussion of the relevant facts and legal principles, however, is warranted. I also agree with Justice Berkman that "[t]he declaration of a mistrial was within the court's discretion, and a retrial of the undecided count would not offend the double jeopardy rule."

After an eight-day trial, the court submitted to the jury the three counts of robbery charged in the indictment (attempted first-degree robbery and two counts of attempted second-degree robbery) and the lesser included offense of attempted third-degree robbery. Deliberations commenced on a Thursday and the jury, throughout the course of that day, requested exhibits, a readback of testimony and additional instruction on the law. The next morning, the jury requested additional exhibits, another readback of testimony and instruction. The jury also reported that it had reached an agreement on one count, was close to an agreement on another and was at an "impasse" on the remaining two counts. The court declined the invitation of defendants to take a partial verdict. Rather, after providing the additional readback and instruction the jury had requested, the court gave the jury a modified *Allen* charge (*Allen v United*

*States*, 164 US 492 [1896]). Early that afternoon, the court responded to additional requests for readbacks of testimony and legal instruction. In addition, the court substituted an alternate juror for a juror who was traveling out of town and had to make a flight. At that juncture, there were no remaining alternates. However, two other jurors, jurors three and eight, asked to be relieved from service due to obligations they had that required them to be out of state; one juror was scheduled to leave on Sunday and the other on Monday morning. Explaining that there were no alternates, the court advised the jurors that they would have to return on Monday if a verdict was not returned by the end of the day. Late that afternoon, at about 5:30 P.M., the jury sent another "impasse" note. That is, although the jury reported that it had reached a verdict on two counts, it declared anew that it remained "at an impasse" on the remaining counts. Another note renewed the request of juror eight to be released from jury duty.

After the court made the notes available to counsel and reported their contents, the following occurred:

"THE COURT: My inclination is to take the verdict and declare a mistrial as to the other charges.

"[THE PROSECUTOR]: I guess that sounds like where we're going, Judge.

"THE COURT: Do counsel want to be heard?

"[COUNSEL FOR DEFENDANT EDDY MARTE]: No.

"THE COURT: Okay. If there is nothing else, we'll bring them in.

"COURT OFFICERS: Yes, Judge

"[COUNSEL FOR DEFENDANT EDDY MARTE]: Judge, you'll take a partial?

"THE COURT: I'll take a partial verdict."

The Court then took the partial verdict. When the Clerk thanked the foreperson and told the foreperson to be seated, the following occurred:

"THE COURT: Counsel, anything for the record?

"[THE PROSECUTOR]: Nothing for the record, Your Honor.

"THE COURT: All right. I want to thank you very much. I know we kept you much longer that I originally indicated it would take. I think you've performed an excellent service, clearly by virtue of your notes and your attention that you have truly become involved in this case in its determination. So, thanks very much. Have a good weekend.

"COURT OFFICER: Jury exiting."

As is evident, defendants voiced no objection to the declaration of a mistrial before the jury was discharged. Defendants did not voice an objection when the court stated that its "inclination" was to declare a mistrial; or when the court went on to make clear that it would take a partial verdict, which, under the circumstances, further indicated even if it did not confirm that the court was making good on its "inclination"; or when the court expressly asked counsel, after taking the partial verdict, if they had "anything for the record"; or when the court was thanking the jury or telling the jurors to have a good weekend; or when the jury began to exit the courtroom. Only at some point after the jury was discharged—at a point when, the record is not definitive on the issue, the jurors may or may not have left the jury room*—did defendants object to the declaration of a mistrial as to the third count of the indictment. At that point, of course, the objection was pointless (*see Warner v New York Cent. R.R. Co.*, 52 NY 437, 443 [1873] ["after the verdict has been received . . . and the jury has been dismissed, they have not the power to be reassembled and alter their verdict"]; *People v Satloff*, 56 NY2d 745, 746 [1982] [after discharge of the jury "it was no longer possible to remedy the defect (in the verdict), if any, by resubmission to the jury for reconsideration of its verdict( )"]).

I agree with the memorandum decision that defendants implicitly consented to the mistrial. As we have stated, a defendant's "consent need not be express, but may be implied from the totality of circumstances attendant upon the declaration of a mistrial" (*Matter of Guido v Berkman*, 116 AD2d 439, 444 [1986]; *see also People v Ferguson*, 67 NY2d 383, 388-389 [1986]). Although the defendants in *Matter of Guido* "were not on notice of an impending mistrial" (116 AD2d at 444), defendants certainly were here. Defense counsel (1) participated in discussion of the subject of a mistrial, expressly stating that they had nothing to say when the prosecutor acknowledged that a mistrial was "where we're going," (2) had multiple opportunities to object to a mistrial before the jury was discharged and (3) did not object when the court discharged the jury or as the jury was leaving the courtroom (*see Matter of Matthews v Nicandri*, 252 AD2d 657, 658 [1998], *appeal dismissed* 92 NY2d 945 [1998] [finding implied consent to mistrial and relying on the "well-established principle that, in the absence of any objection, a defense counsel's active participation in a colloquy concerning the grant of a mistrial will give rise to a finding of

---

* The record reflects only that the court stated "let's hold them," not whether the jurors in fact were held.

consent"]; *People v Lilly*, 187 AD2d 674, 675 [1992], *lv denied* 81 NY2d 973 [1993] ["Not only did the defense counsel actively participate in the various colloquies concerning the jury's inability to reach a verdict, he also registered no protest when the court announced that it believed the jury would be unable to overcome the impasse, and when it ultimately declared a mistrial"]).

A crucial consideration here is that, even indulging the fanciful notion that defense counsel were not on notice before the partial verdict was taken that the court was going to declare a mistrial, it unquestionably was clear that the court was granting a mistrial when it was thanking the jurors for their service and wishing them a good weekend. The silence of counsel even at this crucial juncture requires a finding of consent. Such a finding is all the more reasonable given that counsel pounced with their belated objections only after the jury had been discharged and left the courtroom. Under these circumstances, it encourages gamesmanship to hold that implicit consent cannot be found when a defendant who believes one of his fundamental constitutional rights is being violated does not register any protest (*cf. People v Dekle*, 56 NY2d 835, 837 [1982]). Especially because of the severe consequences for the People's ability to enforce vitally important criminal laws, permitting defendants to parlay their silence into the windfall of a dismissal of the remaining count of attempted robbery would be an embarrassment to the law.

With respect to the question of manifest necessity, "the declaration of a mistrial due to a deadlocked jury is a matter of discretion for the Trial Judge, who is in the best position to determine whether a mistrial is required under the circumstances of the case, and this decision must be accorded great deference" (*People v Sanders*, 51 AD3d 825, 825 [2008], *lv denied* 11 NY3d 741 [2008] [internal quotation marks omitted]). The weighty substantive concern supporting this requirement of great deference was explained by the Supreme Court in *Arizona v Washington* (434 US 497, 509-510 [1978]): "If retrial of the defendant were barred whenever an appellate court views the 'necessity' for a mistrial differently from the trial judge, there would be a danger that the latter, cognizant of the serious societal consequences of an erroneous ruling, would employ coercive means to break the apparent deadlock. Such a rule would frustrate the public interest in just judgments. The trial judge's decision to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a reviewing court."

Neither the memorandum decision nor the dissent gives ap-

propriate deference to the trial court's decision. The memorandum states that "the court failed to confirm that the jury was hopelessly deadlocked either by polling the jurors or by asking the foreperson in the presence of the jury whether a unanimous verdict could be reached in a reasonable amount of time." But this hindsight criticism of the court—neither defendant asked either for the jury to be so polled or the foreperson to be so questioned—disregards what is most important: the jury reported in its last note, as it had indicated in an earlier note that it was at an impasse on two of the four counts (*see United States v Byrski*, 854 F2d 955, 961 [7th Cir 1988] [of the factors appropriately informing a trial judge's decision whether or not a jury is deadlocked, "(t)he most critical factor is the jury's own statement that it was unable to reach a verdict" (internal quotation marks omitted)]; *see also United States v Salvador*, 740 F2d 752, 755 [9th Cir 1984], *cert denied* 469 US 1196 [1985] [same]). Furthermore, in the course of taking the partial verdict, the foreperson confirmed in response to the court's inquiry that the jury was undecided on all counts other than the two counts as to which it had found each defendant not guilty. And because the second impasse note had been preceded by a modified *Allen* charge, the court was entitled for this additional reason to conclude that further deliberations were pointless.

The memorandum also states that "the court reasonably could have asked the jury to continue deliberating past 5:00 P.M. on the date the trial was terminated, a Friday." This objection disregards the very danger recognized in *Arizona v Washington* (434 US 497 [1978], *supra*) that the jury might hastily return an unjust judgment. That danger certainly was exacerbated by the fact that two of the jurors had requested to be discharged at the end of that day due to travel plans that were important to each of them. The memorandum notes that "the court had already directed [the two jurors] to report for deliberations on the following Monday." But the court had not directed all the jurors to report that Monday and doing so risked coercing a verdict on Friday. This objection, moreover, wrongly assumes that the trial judge could not properly have concluded that further deliberations were pointless.

The dissent is not persuasive. In the first place: "a judge's mistrial declaration is not subject to collateral attack . . . simply because he failed to find 'manifest necessity' in those words or to articulate on the record all the factors which informed the deliberate exercise of his discretion" (*Arizona v Washington*, 434 US at 517). Second, the dissent concludes that "[t]he record reflects that the decision to terminate the trial was the result of

the court's attempt to accommodate the interests of juror number eight . . . and juror number three." Hopefully, the trial court was sympathetic to the plight of these jurors; it certainly is fair to assume it was. But the dissent's conclusion that accommodating these jurors was in fact the reason for the court's decision is just baseless as well as manifestly unfair. Indeed, as Justice Berkman wrote, "it is clear from this record that the court was fully aware that it could not declare a mistrial simply to accommodate the jurors' convenience."

The dissent is no less unfair to the trial judge in asserting that "the trial court failed to consider available alternatives before declaring a mistrial." Nothing in the record comes close to showing that the trial judge committed such an elementary error. The most that fairly can be said is that the trial judge did not discuss the subject on the record. But at the risk of belaboring the point, the double jeopardy rights of the defendants were not thereby violated (*Arizona v Washington*, 434 US at 517 [a trial judge's declaration of a mistrial "is not subject to collateral attack . . . simply because he failed . . . to articulate on the record all the factors which informed the deliberate exercise of his discretion"]).

The possibility that defendants might consent to proceeding with less than 12 jurors was not raised by counsel until after the jury was discharged, when it was too late. In any event, the dissent's criticism of the trial court on this ground assumes that the court erred in concluding that further deliberations were pointless. If the court did not err in concluding that further deliberations were pointless, this criticism also is pointless. Morever, unless a trial judge is informed by defense counsel that the defendant is willing to proceed with 11 jurors, the judge should not be faulted if the record does not reflect consideration or discussion of this extraordinary possibility prior to the discharge of the jury.

Finally, the notion that defendants "were incapable of making a contemporaneous objection" is supported by nothing at all. Indeed, it is refuted by the record. Again, even assuming that counsel somehow had been in the dark previously about the court's intentions, they said nothing as the jurors were being thanked and discharged or as they were leaving the courtroom. The reality is that trial judges, sometimes perhaps to their dismay, are not uncommonly interrupted by counsel. Criminal defense attorneys are not and cannot be a timorous lot. Even assuming without reason that counsel were exceptionally timorous, that would not excuse their silence. The only reasonable conclusion is that they impliedly consented and should not be permitted to have their cake and eat it, too.

Tom, J.P. (dissenting). This CPLR article 78 proceeding raises the issue of whether petitioners consented to the declaration of a mistrial and whether the court properly considered all relevant circumstances as well as the available alternatives before finding the jury deadlocked. The mistrial declaration followed a brief period of deliberation by a newly constituted jury that never received an *Allen* charge and was immediately met by petitioners' objection. Under these circumstances, petitioners cannot be said to have acquiesced in the ruling. Furthermore, the court failed to consider alternatives to discharging the jury to accommodate the travel plans of two of the jurors. Thus, the declaration of a mistrial was not a matter of manifest necessity and cannot be considered a provident exercise of the court's discretion. Accordingly, retrial is barred by the prohibition against double jeopardy.

Petitioners, brothers, were jointly tried under a three-count indictment charging them, respectively, with attempted robbery in the first degree (display of a weapon), attempted robbery in the second degree (physical injury to the victim) and attempted robbery in the second degree (aided by another person). At a jury trial, they were acquitted of counts one and two, and the court (John Cataldo, J.) directed a mistrial with respect to count three. Petitioners now seek to permanently enjoin their retrial on count three of the indictment as violative of the constitutional prohibition against double jeopardy.

The trial was conducted over the course of eight days commencing February 18, 2009. On March 5, 2009, the court issued its instructions to the jury, submitting in addition to each count of the indictment the lesser included offense of attempted robbery in the third degree. Prior to the start of jury deliberations, petitioners stipulated that if a verdict were not reached by 1:00 P.M. the following day, the remaining alternate juror would be substituted for juror number two. On the morning of Friday, March 6, the jury sent a note at 11:50 A.M. indicating that they had reached a verdict on count one, were close to a verdict on another count (count two) and evenly split and at an impasse on the remaining charges. At that time, counsel stated that their clients would accept a partial verdict; however, the court declined and, in an abbreviated *Allen* charge (*see Allen v United States*, 164 US 492 [1896]), directed the jurors to continue deliberating.

At 12:20 P.M., the jury sent another note and were returned to the courtroom for requested instruction concerning lesser included offenses. At this time (approximately 12:40 P.M.), the court dismissed juror number two and directed the jury to begin

deliberations anew with the alternate juror substituted in accordance with the stipulated agreement. Counsel for defendant Eddy Marte expressed the "defense position" that the court was required to take a partial verdict from the original panel that included juror number two. The court rejected this argument. Shortly thereafter, the court denied a request by juror number three to be excused from the jury for one day on the following Monday to be with his family in Philadelphia. The court also denied a request by juror number eight to be discharged from the jury at the end of the day to attend a conference in San Diego in connection with his job. The juror explained that he had not previously raised the matter with the court because he did not expect the trial to be so protracted.

Late in the afternoon (some time after 4:30 P.M.), the court addressed two more notes received from the jury. In one, juror number eight reiterated his request to be discharged at the end of the day. In the other, the jury indicated that they were unanimous as to two counts and at an impasse on the other two. The court advised counsel, "My inclination is to take the verdict and declare a mistrial as to the other charges." The prosecutor responded, "I guess that sounds like where we're going, Judge." The court then offered defense counsel the opportunity to be heard, eliciting no response.

The court proceeded to take the jury's verdict of not guilty as to counts one and two and undecided as to count three and the lesser included offense. Asked if the defense had "anything for the record," neither attorney raised any objection. But immediately after the court officer said, "Jury exiting," the transcript shows the court, outside of the jury's presence, directing that the jury be held while it conducted an off-the-record conference with counsel. Immediately after the conference, the court stated, "So, that the record is clear, I'm declaring a mistrial as to Count Three." Counsel for Eddy Marte responded, "So, that the record is clear, we're not consenting to a mistrial because they could have stayed until Monday," when the court could have delivered an *Allen* charge. The court stated, "I gave them an abbreviated *Allen* charge," to which counsel responded that declaring a mistrial "needed a full *Allen* charge."

Counsel advised the court that it was not obligated to grant the request of juror number eight to be discharged and could direct the jury to continue deliberations the following Monday. Alternatively, counsel declared their willingness to proceed with only 11 jurors so as to permit juror number eight to attend his job conference. When the court expressed doubt that the defense could consent to an 11-person jury, counsel replied, "I've done

it." The court responded, "Okay. Fine. I still find that it was an impasse; and they're excused, over your objection."

The case was returned to the trial calendar for April 29, 2009. On that date, petitioners made a motion to dismiss the indictment on the ground of double jeopardy. The court (Carol Berkman, J.) denied the motion, finding that the declaration of a mistrial was within the trial court's discretion. The court observed that while the trial justice had given a "somewhat abbreviated *Allen* charge," an *Allen* charge is not an absolute requirement (citing *Matter of Plummer v Rothwax*, 63 NY2d 243, 253 [1984]), that the trial "court stated repeatedly that it was persuaded that the jurors were at an impasse, even aside from the convenience issue, and that the mistrial was manifestly necessary." The court added, "Moreover, the defense did not timely object to the declaration of a mistrial, as the jury had been discharged before the defense protested, and the defense had plainly been given a chance to be heard on the mistrial issue, but said it did not want to be."

Petitioners brought this article 78 proceeding contending that the trial court failed to conduct the obligatory inquiry before declaring a mistrial. Citing this Court's decision in *Matter of Capellan v Stone* (49 AD3d 121, 126 [2008], *lv denied* 10 NY3d 716 [2008]), they contend that where a mistrial is declared without the consent of the defendant, the protection afforded by the prohibition against double jeopardy bars retrial unless the People meet their "heavy" burden to demonstrate that the declaration was founded upon manifest necessity (*see Arizona v Washington*, 434 US 497, 505 [1978]). The People respond that petitioners "tacitly consented" to the declaration of a mistrial, thereby obviating the need to find manifest necessity. They further maintain that, in any event, the declaration of a mistrial was a proper exercise of the trial court's discretion.

As to the issue of petitioners' consent, the People argue that defense counsel acquiesced in the court's declaration of a mistrial with respect to count three of the indictment by failing to state any objection when the court accepted the partial verdict. They adopt the reasoning of the motion court, which implicitly found that counsel raised no objection until after the jury had been discharged and conclude that this late protest was ineffective. This analysis does not withstand scrutiny.

As a general rule, a defendant in a criminal proceeding is obligated to preserve an asserted error for review by raising a timely objection, thereby apprising the court that the ruling is contrary to law and affording the court an opportunity to remedy the error (*People v Gray*, 86 NY2d 10, 20-21 [1995]). It is

axiomatic, however, that a defendant has no obligation to object to a ruling until it is actually made (CPL 470.05 [2] ["a question of law with respect to a ruling . . . is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling"]).

In the course of jury deliberations in this matter, the trial justice expressed only his "inclination . . . to take the [partial] verdict and declare a mistrial as to the other charges." The tentative nature of the court's suggested propensity is demonstrated by the equivocation inherent in the prosecutor's response, to wit, "I guess that sounds like where we're going, Judge." Up to this point, the court had not declared a mistrial as to the remaining count and counsel were not obligated to register an objection. The court's "announced intention" is not a ruling. In fact, there was no ruling for counsel to protest. It was not until after the court had actually taken the partial verdict and then after an off-the-record conference that it declared a mistrial on count three. While the content of the discussion is not known, it is reasonable to assume that counsel took the opportunity to advise the court of its omission to issue a ruling because the very next item in the transcript is the court's statement, "So, that the record is clear, I'm declaring a mistrial as to Count Three." Counsel's objection followed immediately. The court then responded to counsel that the jurors are "excused, over your objection."

The People's argument that the protest was untimely because, "having discharged the jury, the court had no authority to reassemble them and compel that they return to deliberations" is disingenuous. The transcript of the proceedings clearly indicates that, prior to conducting the off-the-record conference, the court directed that the jurors be held. Immediately before conducting the bench conference and outside the presence of the jury, the court asked counsel if he wanted the jurors held and, after a brief colloquy, stated, "Okay. So, let's hold them." The record is devoid of support for the People's intimation that all 12 jurors, contrary to the court's direction, were not being held outside the courtroom and still present and available. The presumption of regularity that attaches to all criminal proceedings warrants the conclusion that the court's direction was implemented, and is not overcome here by the requisite substantial evidence (see People v Velasquez, 1 NY3d 44, 48 [2003]; People v Austin, 46 AD3d 195, 201 [2007], lv denied 9 NY3d 1031 [2008]).

Furthermore, the People's contention that no protest to the court's ruling could be registered because the jury could not be reassembled to resume deliberations runs afoul of due process

guarantees. If petitioners were incapable of making a contemporaneous objection, their due process right to make a record was abrogated, and the belated ruling constitutes a mode of proceedings error that required no preservation for review (*see People v Ahmed*, 66 NY2d 307, 310 [1985]; *People v Kisoon*, 8 NY3d 129, 135 [2007]; *People v Agramonte*, 87 NY2d 765, 769-770 [1996]). Finally, it should be noted that the Court expressly acknowledged counsels' protest over its mistrial ruling and then excused the jury. Thus, contrary to the People's rendition of events, it is apparent that the jury was not discharged until after petitioners' protest of the court's mistrial declaration was placed on the record.

Since petitioners never consented to a mistrial, the question becomes whether termination of the trial was a matter of manifest necessity. As stated in *Matter of Randall v Rothwax* (78 NY2d 494, 498 [1991]), "The termination of a trial without a defendant's request or consent triggers the double jeopardy bar against reprosecution except in those exceptional cases where 'manifest necessity' compelled the termination." Thus, the operative criterion is not whether petitioners *objected* to the declaration of a mistrial, as the motion court found and as the People now suggest, but whether petitioners *failed to consent*. In the absence of consent, clearly manifested by contemporaneous objection to the court's mistrial declaration, the question confronting this Court is whether the People have established that termination of the trial was a matter of manifest necessity.

A court may discharge a deliberating jury prior to rendering a verdict if "[t]he jury has deliberated for an extensive period of time without agreeing upon a verdict with respect to any of the charges submitted and the court is satisfied that any such agreement is unlikely within a reasonable time" (CPL 310.60 [1] [a]). To support a finding of manifest necessity (*see e.g. People v Cook*, 52 AD3d 255, 256 [2008], *lv denied* 11 NY3d 735 [2008]), it must be demonstrated that the court took all relevant circumstances into account and considered all proper alternatives before declaring the mistrial (*see Matter of Rivera v Firetog*, 11 NY3d 501, 506-507 [2008], *cert denied* 556 US —, 129 S Ct 2012 [2009]; *Matter of Enright v Siedlecki*, 59 NY2d 195, 200 [1983]; *Matter of Robles v Bamberger*, 219 AD2d 243, 247 [1996], *lv denied* 88 NY2d 809 [1996]). Significantly, "a mistrial founded solely upon the convenience of the court and the jury is certainly not manifestly necessary" (*People v Michael*, 48 NY2d 1, 9 [1979]).

The People are generally "entitled to only one opportunity to compel a defendant to stand trial because the 'defendant pos-

sesses a "valued right" to have his trial completed by a particular tribunal on the first presentation of the evidence' " (*Matter of Rivera*, 11 NY3d at 506, quoting *People v Baptiste*, 72 NY2d 356, 359-360 [1988]). However, where a crime charged against the defendant cannot be resolved on the merits, such right is outweighed by the public interest in the finality of criminal proceedings in a verdict. The discharging of a jury that is hopelessly deadlocked is "[t]he classic example of charges that may be retried after the termination of a trial without the defendant's consent" (*id.*).

A trial court is afforded broad discretion to decide whether there is no reasonable probability that a genuinely deadlocked jury can agree on a verdict, and a reviewing court is obliged to accord its decision great deference (*id.* at 507). However, before exercising its discretion, a trial court is constrained to consider various factors, including "the length and complexity of the trial, the length of the deliberations, the extent and nature of the communications between the court and the jury, and the potential effects of requiring further deliberation" (*id.*, quoting *Matter of Plummer*, 63 NY2d at 251). Moreover, a reviewing court is required to "examine whether the trial court 'properly explored the appropriate alternatives' " (*id.*, quoting *Hall v Potoker*, 49 NY2d 501, 505 [1980]).

The trial of this matter consumed eight days, and at the time the court declared a mistrial, the jury had spent two days deliberating. However, deliberations were newly commenced when the court, upon the parties' agreement, substituted an alternate juror early in the afternoon of Friday, March 6, 2009. The newly constituted panel was never given an *Allen* charge, and at the time the jury was discharged, the panel had deliberated for only a few hours. Thus, the extent of deliberations falls far short of those engaged in by the jury in *Matter of Rivera* (*see* 11 NY3d at 505 [5¹/₂ days of deliberations following a five-day trial]) and far exceeds the limited duration and complexity found to warrant truncated jury deliberation in *Matter of Plummer* (63 NY2d at 251 [4¹/₂ hours of deliberations following a trial lasting little more than an afternoon]).

The record reflects that the decision to terminate the trial was the result of the court's attempt to accommodate the interests of juror number eight in attending the San Diego conference and juror number three in spending the following Monday with his family in Philadelphia. As noted, the convenience of jurors is not a valid basis upon which to declare a mistrial (*People v Michael*, 48 NY2d at 9). In any event, a one-day adjournment would have sufficed to accommodate the plans of juror number three (*see id.* [delay of several days reasonable]).

Whatever might be said of the genuineness of the jury deadlock in this matter, it is clear that the trial court failed to consider available alternatives before declaring a mistrial. Defense counsel's observation that the court need not discharge juror number eight, their presentation of the option of proceeding with only 11 jurors, the discussion of that alternative, and the court's discharge of the jury are encompassed within a single page of the transcript. In fact, the ability of a defendant to waive trial by a jury of 12 persons had been endorsed by the Court of Appeals more than a year earlier (*People v Gajadhar*, 9 NY3d 438 [2007], *affg* 38 AD3d 127 [2007]). While the trial court conceded the legitimacy of the procedure, it failed to explore its utility under the circumstances confronting it. Furthermore, while summarily rejecting the defense proposal and finding that the jury was unable to agree on the remaining charges, the court neither delivered an *Allen* charge to the panel nor discussed with the jurors the genuineness of the deadlock to ascertain that further deliberations would be fruitless (*cf. Matter of Plummer*, 63 NY2d at 252). Finally, since the expressed desires of the two jurors could be readily accommodated, as indicated, there was no potential that coercion or prejudice would result if the court had simply chosen to proceed with 11 jurors and exhorted them to return for further deliberations on the following Tuesday (*cf. id.* at 253).

In sum, the court improvidently exercised its discretion in declaring a mistrial, and retrial is barred by the constitutional protection against double jeopardy (*id.* at 245). Accordingly, the petition should be granted and the remaining count of the indictment dismissed.