Thomas M. BEATTIE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10505.

Court of Appeals of Alaska.

June 24, 2011.

Jane B. Martinez, Contract Attorney, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

BOLGER, Judge.

Thomas M. Beattie was tried for felony driving under the influence, a charge that required the State to prove that Beattie had at least two prior convictions for driving under the influence within the preceding ten years.[1] The superior court granted Beattie's request to bifurcate his trial, so that the jury would hear no evidence of Beattie's prior convictions unless and until they found Beattie guilty of driving under the influence on the current occasion.

The primary issue presented in this appeal arises because, after the jury found Beattie guilty in the first stage of the trial, the trial judge mistakenly dismissed the jurors without asking them to make any finding with regard to Beattie's prior convictions. To rectify this error, the superior court convened a second jury to decide whether Beattie had the requisite prior convictions. Beattie claims that this procedure violated the constitutional guarantee against double jeopardy. As we explain in this opinion, we conclude that Beattie implicitly consented to this procedure, and thus his double jeopardy rights were not violated.

Beattie also argues his five-year sentence is excessive. We conclude that we do not have jurisdiction to hear Beattie's sentence appeal because his composite sentence falls within the presumptive range for his felony offense.

### Background

The State charged Beattie with felony DUI, driving with a revoked license, and resisting arrest.[2] At a pretrial evidentiary hearing, Superior Court Judge Kari Kristiansen granted Beattie's request for a bifurcated trial on the felony DUI charge. Superior Court Judge Eric Smith then began a trial on the three charges, reserving the issue of Beattie's prior convictions for the second phase of the trial.

On the last day of trial, defense counsel told the prosecutor that he believed Beattie would stipulate to proof of his prior convictions. This procedure would remove the need for this issue to be submitted to the jury. Later that day, the jury returned its verdicts, acquitting Beattie of resisting arrest and convicting him of driving with a revoked license and driving under the influence.

The court reviewed the verdicts with the parties, determined that they were in proper form, read the verdicts out loud, and polled the jury members individually. The judge then thanked the jurors for their service and told them that they were free to discuss the case with others. Then the judge advised the jury about a decision-making survey and asked the bailiff to give them more detailed

---

1. See AS 28.35.030(n).

2. AS 28.35.030(a)(1), (n); AS 28.15.291(a)(1); AS 11.56.700(a)(1).

written instructions about how to fill it out. The judge advised the jury that he would be available to answer any questions after court adjourned. Defense counsel did not object or request that the jury be retained for the second phase of the trial. Judge Smith then discharged the jury.

After the jury was dismissed, the court and parties stayed on the record and scheduled the sentencing date, discussed the (felony) presentence report, and discussed post-conviction bail—all issues that assumed no further jury proceedings were necessary. During the bail discussion, the prosecutor noted that now Beattie had been convicted of another felony. That is, the prosecutor's remarks assumed that the present case counted as a felony conviction. The defense did not object or request that the jury be recalled. Before the court adjourned, the judge announced that the attorneys were free to talk with the jury. In total, the court was on record for approximately eight minutes between the time that the jury came into the courtroom until the court adjourned.

After adjournment, the judge and attorneys and investigators for both parties discussed the case with the jurors who remained at the courthouse. The defense did not object to the contact with the jurors, even though the State's investigator discussed Beattie's prior convictions.

The next morning, court staff called the parties to remind them that they needed to put the stipulation regarding Beattie's prior DUI convictions on the record, and they scheduled a hearing for 1:30 p.m. that day to do so. Beattie's attorney confirmed on the telephone that Beattie would be stipulating to his prior convictions.

But when the parties appeared in court for the hearing, Beattie's attorney announced that his client would *not* be stipulating to his prior convictions. The defense attorney explained that he had spoken about Beattie's case with a senior attorney in his office; this senior attorney pointed out that, because the

jury was discharged without being asked to decide the issue of Beattie's prior convictions, Beattie had a potential double jeopardy objection to any renewed proceedings. The defense attorney told the superior court that, under these circumstances, he was obliged to advise his client not to stipulate to the prior convictions. The defense attorney additionally argued that it was too late to recall the original jury—that some jurors had been tainted by their post-trial conversations with the trial judge, the attorneys for both sides, and their investigators.

Over Beattie's objection, Judge Smith decided to call in a second jury to determine the prior-convictions issue. (Defense counsel later agreed that only the prior-convictions issue would need to be submitted to the new jury.) The second jury found the State proved Beattie's prior convictions beyond a reasonable doubt, and the court entered a conviction for felony DUI. The court sentenced Beattie to four and one-half years of imprisonment for the felony DUI and six months for the license charge.

### Double Jeopardy

■ The protection against double jeopardy includes the defendant's right to have the case decided by the original jury empaneled and sworn to try the case.[3] Beattie asserts that his double jeopardy rights were violated when the superior court convened a second jury to decide the latter phase of his bifurcated trial.

■ Once jeopardy attaches, a defendant may not be retried before a second jury for the same offense "unless he has consented to a mistrial or there was manifest necessity for granting a mistrial."[4] But criminal defendants may relinquish their protection against double jeopardy by their own conduct or by the conduct of their attorneys.[5]

■■ Most federal courts have concluded that defendants may relinquish their protection against double jeopardy when they have

---

**3.** *Friedmann v. State,* 172 P.3d 831, 836 (Alaska App.2007).

**4.** *Douglas v. State,* 214 P.3d 312, 326 (Alaska 2009).

**5.** *Dutton v. State,* 970 P.2d 925, 932 (Alaska App.1999).

the clear opportunity to object to the discharge of the original jury but fail to do so.[6] Many state courts have adopted the same rule.[7] We join these courts and conclude that a defendant gives his implicit consent to trial before a second jury when he has the clear opportunity to object to the discharge of the original jury but fails to do so.

The Fourth Circuit Court of Appeals dealt with a similar situation to Beattie's in *United States v. Ham.*[8] In *Ham,* the district court completed most of a trial but failed to try a discrete issue required for the government's forfeiture request. The court rules required a special verdict regarding the forfeiture issue, but the trial court simply failed to present the forfeiture issue to the original jury.[9]

The Fourth Circuit held that the defendant had consented to the dismissal of the first jury because his attorney had the opportunity to object to the discharge of the jury but failed to do so.[10]

> The record in this case shows that, after the clerk read the verdict and the defendants polled the jury, the district judge thanked the members of the jury for their time and effort, apologized for their inconvenience, and wished them a Happy Easter. With these short remarks, the district judge was clearly dismissing the jury.

> [Defendant] Swami's counsel could have interrupted the judge before he discharged the jury and reminded him that the jury had not completed the forfeiture phase of the trial. If Swami had wanted the original jury to decide the … forfeiture issue, he should have informed the court of this desire before it dismissed the jury.

> Although Swami had a right to have the original jury decide the … forfeiture issue, he could have asserted this right and prevented the district court from prematurely dismissing the jury. He did not do so. Swami cannot avoid a second trial on the forfeiture count on double jeopardy grounds and thereby profit from his failure to act. The actions of Swami's attorneys suggest that the double jeopardy argument was a mere afterthought that one of Swami's attorneys conjured up long after the district court dismissed the original jury.[11]

These facts are almost identical to Beattie's, except in Beattie's case, it was not merely "suggested" that the double jeopardy argument was an afterthought-in Beattie's case the defense attorney clearly admitted that he did not consider the double jeopardy implications of dismissing the jury until after the jury had been discharged.

6. *See United States v. DiPietro,* 936 F.2d 6, 11–12 (1st Cir.1991) (finding implied consent to a mistrial where error occurred several hours before court declared mistrial, defense attorney knew court was considering remedies although court did not explicitly announce it was considering mistrial, and parties and court stayed in courtroom for several minutes after mistrial decision was announced, during which time defense attorney argued for judgment of acquittal and discussed new dates for trial but did not object to mistrial); *United States v. Nichols,* 977 F.2d 972, 974 (5th Cir.1992) (holding that consent need not be express, but may be implied from the totality of the circumstances attendant to the declaration of mistrial); *Camden v. Circuit Court,* 892 F.2d 610, 615 (7th Cir.1989) ("The record reveals that Camden and her attorney were afforded a minimal but adequate opportunity to object, albeit in the presence of the jury while the mistrial was being declared."); *United States v. Puleo,* 817 F.2d 702, 705 (11th Cir.1987) (noting defendant consented to mistrial where trial judge expressed clear intent to declare mistrial and defense counsel had opportunity to object but did not).

7. *See Brock v. State,* 936 N.E.2d 266, 270 (Ind. App.2010) (indicating defendant waived right to claim double jeopardy violation by not objecting to State's request for mistrial or court's decision to grant one); *State v. White,* 369 N.W.2d 301, 304 (Minn.App.1985) (finding implied consent to a mistrial where defense counsel understood trial court intended retrial and counsel's responses encouraged court to declare mistrial); *Marte v. Berkman,* 70 A.D.3d 493, 494, 895 N.Y.S.2d 376 (N.Y.App.Div.2010) (holding that defense counsel's failure to object when court invited comment, or before the jury was discharged, constituted implied consent to declaration of mistrial); *State v. Houston,* 328 S.W.3d 867, 881 (Tenn. Crim.App.2010) (noting that, where the trial court clearly intends to declare mistrial and defendant fails to object to discharge of jury, defendant's consent can be inferred).

8. 58 F.3d 78 (4th Cir.1995).

9. *Id.* at 80–81.

10. *Id.* at 84.

11. *Id.*

■ In Beattie's case, we may infer from the totality of the conduct by his counsel that Beattie consented to the discharge of the jury. The court discussed end-of-trial procedures with the parties before bringing the jury in to deliver the verdict. After the jury delivered the verdict, the court advised the jurors regarding a survey about their experience as jurors, thanked the jurors for their time, advised them they were free to talk about the case, and dismissed them.

As in *Ham*, the judge's remarks and procedure clearly indicated he was dismissing the jury. Beattie's counsel could have interrupted at any time and reminded the court of the need to retain the jury to try the prior-convictions issue. Beattie's counsel could have objected to the dismissal of the jurors. And even after the court dismissed the jurors, the parties and court remained on the record and discussed sentencing and post-conviction bail. Beattie still did not raise any request to have the jury recalled. Instead, after the court adjourned, Beattie's counsel and investigator participated in discussions with members of the jury that would prevent the jury from being recalled.

Beattie's attorney had ample opportunity to object to the discharge of the jury. His acquiescence and his participation in the post-discharge discussions establishes that Beattie consented to the discharge of the jury. Because Beattie consented to the discharge of the original jury, the superior court did not violate Beattie's double jeopardy rights by convening a second jury to determine the issue of his prior convictions.

### Sentence Appeal

■ Judge Smith sentenced Beattie to four and one-half years for felony DUI and six months for driving with a revoked license. The judge then stated, "The [net] is five years." We assume for purposes of this appeal that the judge intended to impose a five-year composite sentence. Beattie now argues that this composite sentence is exces-sive, relying on his right to appeal his sentence under AS 12.55.120.

The sentence appeal statute provides that this court has authority to review a misdemeanor sentence that exceeds 120 days to serve.[12] Thus, if Beattie had been convicted of driving with a revoked license alone and had been sentenced to the same six months to serve, we would have the authority to review his sentence. However, Beattie's composite sentence is within the applicable presumptive range for a third felony offender convicted of a class C felony.[13] Alaska Statute 12.55.120(e) prohibits a defendant from challenging his sentence as excessive if the "sentence [is] within an applicable presumptive range set out in AS 12.55.125."

We recently determined that we have no jurisdiction to decide a sentence appeal in this situation—where the composite sentence falls within the presumptive range for the defendant's most serious conviction.[14]

Both the Alaska Supreme Court and this Court have repeatedly held that when a defendant is sentenced for two or more offenses, Alaska law does not require that each of the defendant's separate sentences be individually justifiable under the *Chaney* sentencing criteria, as if that sentence had been imposed in isolation. Rather, the question is whether the defendant's combined sentence is justified in light of the entirety of the defendant's conduct and history.[15]

Because the propriety of Beattie's sentence must be assessed in light of the totality of his conduct and background, we conclude that we should not review Beattie's misdemeanor sentence when we have no jurisdiction to review his accompanying felony sentence.

We have no jurisdiction to review Beattie's composite sentence. Instead, we must refer Beattie's case to the Alaska Supreme Court under Appellate Rule 215(k).

---

**12.** *See* AS 12.55.120(a); AS 22.07.020(b).

**13.** *See* AS 12.55.125(e)(3).

**14.** *See Richards v. State*, 249 P.3d 303, 306–07 (Alaska App.2011).

**15.** *Id.* at 307 (emphasis omitted) (footnotes omitted) (citing *State v. Chaney*, 477 P.2d 441, 443 (Alaska 1970)).

*Conclusion*

We AFFIRM the superior court's judgment of conviction, but we lack jurisdiction to decide whether the sentence is excessive. We refer that matter to the Alaska Supreme Court.